**McCarter & English, LLP**
Lanny S. Kurzweil, Esq.
Ryan Richman, Esq.
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Telephone: (973) 639-2044
Facsimile: (973) 297-3810
lkurzweil@mccarter.com
rrichman@mccarter.com
*Attorneys for Defendants, E. I. du Pont de Nemours
and Company, The Chemours Company, and
The Chemours Company FC, LLC*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RENEE MESOGIANES AND WILLIAM MESOGIANES, h/w | ) )  ) Civil Action No. _____ |
| Plaintiffs, | ) ) |
| v. | ) ) |
| A CLEMENTE, INC.; ANTHONY CLEMENTE, INC.; SOLVAY SPECIALTY POLYMERS, USA, LLC; SOLVAY SOLEXIS, INC.; ARKEMA, INC.; E. I. DU PONT DE NEMOURS & COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; THE 3M COMPANY; AND JOHN DOE ENTITIES #1-20 | ) NOTICE OF REMOVAL ON BEHALF ) OF E. I. du PONT de NEMOURS AND ) COMPANY ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) ) ) |

TO:   **THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

Defendant E. I. du Pont de Nemours and Company ("DuPont") hereby removes the above-captioned case pursuant to 28 U.S.C. § 1441 and § 1442 from the Superior Court of New Jersey, Law Division, Salem County, to the United States District Court for the District of New Jersey. The grounds for removal are as follows:

I.      **BACKGROUND**

        A.      **Allegations of Plaintiffs' Amended Complaint**

        1.      This suit involves claims against DuPont for acts taken under the express authority and control of agencies and officers of the United States.  It is thus removable under 28 U.S.C. § 1442(a)(1).

        2.      On October 20, 2021, Plaintiffs Renee Mesogianes and William Mesogianes (collectively "Plaintiffs") filed a Complaint in the Superior Court of New Jersey, Law Division, Salem County, in a case captioned as *Mesogianes, et. al. v. Clemente, Inc., et. al.*, Case No. SLM-L-000199-21.  This initial Complaint listed as defendants only A. Clemente, Inc., Anthony Clemente, Inc. (collectively, "Clemente") and John Does 1 to 10.  A true and correct copy of the Complaint is attached hereto as Exhibit B.

        3.      On December 13, 2021, Plaintiffs filed an Amended Complaint.  Plaintiffs made multiple substantive changes, including adding DuPont and six other new Defendants (Solvay Specialty Polymers, USA, LLC; Solvay Solexis, Inc.; Arkema, Inc.; The Chemours Company; The Chemours Company FC, LLC; and The 3M Company).  A true and correct copy of the Amended Complaint is attached hereto as Exhibit A.

4.      The Amended Complaint was served on DuPont on December 27, 2021.

5.      The Amended Complaint alleges that from 1891 to 2015, DuPont owned and operated Chambers Works, a plant located at 67 Canal Road and Route 130, in Pennsville and Carneys Point Townships, Salem County ("Chambers Works" or the "Site").  Exhibit A at ¶ 68.

6.      The Amended Complaint alleges that during this time DuPont produced, used, and discharged into the environment approximately 1,200 separate chemicals, pollutants, and other hazardous substances at Chambers Works.  *Id.* at ¶ 69.

7.      Plaintiffs allege in the Amended Complaint that multiple broad categories or types of chemicals or products, either alone or in combination, caused or contributed to their personal injuries, including (among others): (1) poly- and perfluoroalkyl substances ("PFAS"); (2) halogenated hydrocarbons; and (3) "numerous mixtures and wastes consisting of multiple compounds, substances, and/or products (*e.g.*, . . . fuel, explosives, [and] ammunition …)".  *Id.* at ¶ 4.[1]  Throughout the Amended Complaint, Plaintiffs reiterate the breadth of the chemicals included in their allegations by referencing PFAS and "other toxins."  *See, e.g., id.* at ¶¶ 75, 97, 114, 143.

---

[1] DuPont does not consider Plaintiffs' Amended Complaint adequately pled under either New Jersey or federal pleading standards.  DuPont's references to and discussion of Plaintiffs' allegations for purpose of this Notice are solely for purposes of demonstrating the propriety of removal and the existence of federal subject-matter jurisdiction, without waiver of any defenses, including as to the sufficiency of the Amended Complaint or allegations within it.

3

**B. DuPont Manufactured Chemical Compounds At Its Chambers Works Site Under Federal Direction**

8.      Throughout the World War II period, DuPont entered into numerous contracts with the United States for the manufacturing of chemical compounds to be produced at Chambers Works and to be used by the United States and its Allies to support the war effort.

9.      These government contracts, as described below, compelled DuPont in some circumstances to build additional manufacturing plants at Chambers Works, and to vastly increase the volume of chemical compounds manufactured at Chambers Works.  The manufacture of these chemical compounds necessarily resulted in air and water discharges inherently associated with DuPont's manufacturing processes.

**Contract No. W-670-ORD-2210 to Produce Dinitrotoluene**

10.      On April 23, 1942, DuPont entered into contract No. W-670-ORD-2210 with the United States that required the production of 1,550,000 pounds of dinitrotoluene at Chambers Works.  Dinitrotoluene is a precursor to trinitrotoluene (TNT), an explosive.  Plaintiffs allege that explosives chemicals released into the environment from Chambers Works caused or contributed to their injuries.  Exhibit A at ¶ 4.

11.      Contract W-670-CRD-2210 mandated that DuPont produce dinitrotoluene in strict accordance with United States Army specifications.

**Contract No. W-7412-Eng-2 to Produce Perfluoroheptane**

12.      On November 17, 1942, DuPont entered into contract No. W-7412-Eng-2 with the United States to erect a plant to be located at the Chambers Works Site.  The new plant was

4

intended to produce 20,000 pounds of perfluoroheptane at the earliest possible date. Perfluoroheptane is a halogenated hydrocarbon. Plaintiffs allege that halogenated hydrocarbons released into the environment from Chambers Works caused or contributed to their injuries. Exhibit A at ¶ 4.

13.     DuPont accepted the terms of the government's contract No. W-7412-Eng-2 with several conditions, including that the parties would agree on the correct specifications for the production of perfluoroheptane. The contract also provided that because DuPont had no experience manufacturing perfluoroheptane, nor any history of building a plant for the production of this chemical prior to doing so at the government's behest, any failure to perform the government's work successfully would not subject DuPont to liability nor prejudice its right to be paid.

### Contract No. W-7412-Eng-6 to Produce Perfluoroxylene and Fluorolube

14.     On June 1, 1944, the United States Army Corps of Engineers ("Corps of Engineers") authorized DuPont, by Letter Contract W-7412-Eng-6, to construct and operate a large-scale plant at Chambers Works for the manufacture of perfluoroxylene and fluorolube. Perfluoroxylene and fluorolube are halogenated hydrocarbons. Plaintiffs allege that halogenated hydrocarbons released into the environment from Chambers Works caused or contributed to their injuries. Exhibit A at ¶ 4. DuPont was requested to furnish labor, material, tools, machinery, equipment, facilities, and supplies not furnished by the United States to complete this project. DuPont was instructed by the government to do everything necessary for the construction of a plant to produce 3550 pounds of perfluoroxylene per day and 215 pounds of fluorolube per day. The plant would be owned by the government and located on DuPont's land at Chambers Works, which would be leased or licensed

to the government for the period of the contract.  The plant was to be in operation no later than September 1, 1943.

**Contract No. W-7412-Eng-3 to Produce Uranium Products**

15.     On November 20, 1942, the Corps of Engineers, by Letter Contract W-7412-Eng-3, placed an order with DuPont to furnish, in the shortest possible time, all labor, material and equipment to construct plants at Chambers Works for the: (1) manufacture of uranium dioxide; (2) conversion of uranium dioxide to uranium tetrafluoride; and (3) conversion of uranium tetrafluoride to metallic uranium.  These compounds fall under the Plaintiffs' description of numerous mixtures and wastes consisting of multiple compounds, substances, and/or products such as fuel, explosives, and ammunition, which they allege caused their injuries.  Exhibit A at ¶ 4.

16.     Full-scale operation of the above plants at Chambers Works was ordered by the government to be complete by May 25, 1943.

17.     Because DuPont had no experience in the design, construction or operation of plants of this nature, except for the production of uranium tetrafluoride, the terms of Letter Contract W-7412-Eng-3 protected DuPont's right to be paid by the government and shielded DuPont from liability in the event that a goal outlined in the Letter Contract was not fulfilled.

**Contract No. W-7412-Eng-22 to Produce Tetramag Slag and Dross**

18.     DuPont and the United States government thereafter entered into Letter contract No. W-7412-Eng-22.  This contract called for the erection of a Recovery Plant at Chambers Works to convert tetracal slag and dross and tetramag slag and dross, which would be supplied to DuPont

6

by the government, into a satisfactory feed material to manufacture uranium dioxide as authorized by Letter Contract W-7412-Eng-3.  The compounds involved in this manufacturing process fall under the Plaintiffs' description of numerous mixtures and wastes consisting of multiple compounds, substances, and/or products such as fuel, explosives, and ammunition, which they allege caused their injuries.  Exhibit A at ¶ 4.

19.     The Recovery Plant was to have an estimated capacity to produce feed material in sufficient quantity so that DuPont could operate the uranium dioxide plant at a capacity to produce 47 tons of uranium dioxide per month.

20.     For the purposes of housing production equipment to be used to manufacture uranium dioxide, DuPont buildings at Chambers Works were to be rented by the government; and temporary buildings constructed at Chambers Works were to be owned and paid for by the government.

21.     Letter Contract W-7412-Eng-22 mandated that the Recovery Plant be ready for full scale operation not later than September 1, 1943.

22.     The formal contract, as executed on May 10, 1944, provided for the conversion of two types of slag and dross to peruranic acid as a feed material for the manufacture of uranium dioxide.  The plant at Chambers Works was designed to have a processing capacity of 130 tons of slag and 14.5 tons of dross per month to produce 44.5 tons of peruranic acid.  Peruranic acid falls under the Plaintiffs' description of numerous mixtures and wastes consisting of multiple compounds, substances, and/or products such as fuel, explosives, and ammunition, which they allege caused their injuries.  *Id.* at ¶ 4.

**Contract No. W-7412-Eng-8 to Produce Redistilled Anhydrous Hydrofluoric Acid**

23.     Additionally, by Letter Contract W-7412-Eng-8, issued on December 31, 1942, the Corps of Engineers requested that equipment be installed in buildings situated within Chambers Works for the purpose of producing 300,000 pounds of redistilled anhydrous hydrofluoric acid. Redistilled anhydrous hydrofluoric acid falls under the Plaintiffs' description of numerous mixtures and wastes consisting of multiple compounds, substances, and/or products such as fuel, explosives, and ammunition, which they allege caused their injuries.  Exhibit A at ¶ 4.

24.     As further explained below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1442(a)(1) because Plaintiffs bring claims for or relating to actions that occurred while DuPont was acting under a federal officer or agency.

**II.     REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1442(A).**

25.     This Court has subject matter jurisdiction under 28 U.S.C. § 1442(a) because this is a suit against a "person acting under [an] officer[] of the United States or of any agency thereof . . . for or relating to an[] act under color of such office."

26.     Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation

omitted).   This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)."  *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).  To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal.  *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (alterations in original) (internal quotation marks omitted).  *Accord id.* at 811 ("Unlike the general removal statute, the federal officer removal statute [Section 1442(a)] is to be 'broadly construed' in favor of a federal forum."); *see also Cessna v. Rea Energy Cooperative, Inc.*, 753 Fed. Appx. 124, 1127 (3d Cir. 2018) (citing *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007)).

27.     The case is removable pursuant to § 1442(a) because "(1) [DuPont] is a 'person' within the meaning of the statute; (2) the plaintiffs' claims are based upon [DuPont's] conduct 'acting under' the United States, its agencies, or its officers; (3) the plaintiffs' claims against [DuPont] are 'for, or relating to' an act under color of federal office; and (4) [DuPont] raises a colorable federal defense to the plaintiff's claims."  *Papp*, 842 F.3d at 812 (brackets omitted).

28.     Significantly, this Court has recently denied motions to remand two suits against DuPont that included similar claims relating to alleged use or release of chemicals manufactured by DuPont at Chambers Works and elsewhere pursuant to government contracts on the basis that all four prongs for proper removal under § 1442(a) were satisfied.  *New Jersey Dep't of Envtl. Prot. v. E. I. du Pont de Nemours & Co.*, 2020 WL 2041382, at *5 (D.N.J. Apr. 28, 2020); *New Jersey Dep't of Envtl. Prot. v. E. I. du Pont de Nemours & Co.*, 2020 WL 2611539, at *7 (D.N.J. May 22, 2020).

## A.      DuPont is a "Person" Under 28 U.S.C. § 1442(a)

29.      DuPont is a corporate entity, and corporations are "person[s]" pursuant to § 1442(a)(1).  *Papp*, 842 F.3d at 812 (for purposes of Section 1442(a), "a corporation[] is in legal fact a person" (citing 1 U.S.C. § 1)).

## B.      Plaintiffs' Claims Are Based on DuPont's Conduct While "Acting Under" the United States

30.      The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer.  *Papp*, 842 F.3d at 812.  "The words 'acting under' are to be interpreted broadly . . . ."  *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 136 (2d Cir. 2008) (citation omitted).  The "acting under" requirement, like the federal removal statute overall, is to be "liberally construe[d]" to cover actions that involve "an effort to assist, or to help carry out, the federal supervisor's duties or tasks."  *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007)); *see also In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 468 (3d Cir. 2015), *as amended* (June 16, 2015).

31.      The classic case of government assistance as it relates to government contractors is when "the private contractor acted under a federal officer or agency because the contractors 'help[ed] the Government to produce an item that it need[ed].'"  *Defender Ass'n*, 790 F.3d at 468 (quoting *Watson*, 551 U.S. at 153).  When "the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete," that contractor is "acting under" the authority of a federal officer.  *Ruppel*, 701 F.3d at 1181; *see also Defender Ass'n*, 790 F.3d at 468–70.

32.     Here, DuPont was acting under the United States government when it performed pursuant to government contracts including but not limited to, W-7412-Eng-2, W-7412-Eng-6, W-7412-Eng-3, W-7412-Eng-22, W-7412-Eng-8, and 670-ORD-2210 ("Chambers Works Contracts") to produce chemicals including but not limited to perfluoroheptane, perfluoroxylene, fluorolube, uranium dioxide, anhydrous hydrofluoric acid, and dinitrotoluene ("Chemical Compounds") to make ammunition and other products required by the government for the war effort.

33.     DuPont was acting under the supervision of the United States government at Chambers Works as the Chambers Works Contracts contain provisions which dictate the government specifications that DuPont was required to follow in manufacturing each chemical compound.

34.     Moreover, DuPont's contractual relationship with the government fits the classic government assistance scenario as the Chambers Works Contracts required DuPont to work for the government by producing Chemical Compounds that the government needed to advance the war effort.

35.     In fact, DuPont contracted with the government to manufacture products that DuPont had never historically produced, including, but not limited to perfluorheptane, uranium dioxide, and metallic uranium.  Thus, DuPont's sole purpose in manufacturing these chemicals was due to government demand.

36.     Thus, DuPont was acting under government supervision and direction at Chambers Works in manufacturing the Chemical Compounds as DuPont's production was done pursuant to government specifications, and DuPont was producing the Chemical Compounds to assist the government with products that the United States government needed during a time of war.

11

C.   **Plaintiffs' Claims against DuPont Are "For, or Relating To" Acts under Color of Federal Office**

37.     The next requirement, often referred to as the "nexus" requirement, demands that the alleged conduct have been undertaken "for or relating to" a federal office.[2]  To meet this requirement, "it is sufficient for there to be a connection or association between the act in question and the federal office."  *Defender Ass'n*, 790 F.3d at 471.  With respect to alleged discharge or release of substances used or related to DuPont's performance of the government manufacturing contracts set forth above, as this Court recognized in denying motions to remand other cases removed by DuPont on the same basis, it is sufficient for the removing party to allege, as DuPont does here, "that the manufacturing process of certain materials [at issue] . . . was at behest of the government and is related to the discharges that from [sic] the basis of Plaintiffs' complaint."  *New Jersey Dep't of Envtl. Prot.*, 2020 WL 2611539, at *4-5.

38.     In the matter at bar, Plaintiffs allege that from 1891 to 2015, DuPont owned and operated Chambers Works and produced, used, and discharged into the environment approximately 1,200 separate chemicals, pollutants, and other hazardous substances.  Exhibit A at ¶¶ 68, 69.  Plaintiffs claim that their injuries were caused by an exhaustive list of chemicals and substances—a list which encompass all 1,200 of these substances.  *Id.* at ¶ 4.  Plaintiffs repeatedly allege that their injuries were caused by DuPont's conduct "at all relevant times", "for decades", and "at all material times hereto."  *See, e.g.*, *id.* at ¶¶ 96, 122, 127.

---

[2] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction."  *Albrecht*, 2011 WL 5109532, at *5.

39.     As demonstrated by the Chambers Works Contracts, DuPont produced and utilized hazardous substances at Chambers Works as ordered by the U.S. government.

40.     Therefore, the "for or relating to" prong is satisfied because the Plaintiffs' claims arise at least in part from DuPont's production of certain chemicals manufactured at the government's behest and pursuant to military specifications.  Plaintiffs' claims encompass the entire period of DuPont's operation of Chambers Works, and Plaintiffs specifically list the types of chemicals DuPont produced at Chambers Works at the government's behest and pursuant to military specifications as causing or contributing to their injuries.  *Id.* at ¶ 4.  For example, Plaintiffs expressly allege harm from "halogenated hydrocarbons," and two of DuPont's government contracts were for the production of halogenated hydrocarbons.  *Id.* at ¶ 4(b).

**D.    DuPont Has Colorable Federal Defenses to Plaintiff's Claims**

41.     "At the removal stage," DuPont need only show that a federal defense is "legitimate and could reasonably be asserted, given the facts presented and the current law."  *Papp*, 842 F.3d at 815 (brackets omitted).  "A defendant 'need not win his case before he can have it removed.'"  *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal, defendant must raise "colorable federal defense").  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue."  *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014).  Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants."  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770,

13

ME1 39352440v.1

783–84 (E.D. Pa. 2010).  "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'"  *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).  The Court's role here is "not to resolve whether the defendant has established the [] defense or to resolve factual disputes, but only to ensure the existence of some competent evidence supporting a 'colorable' federal defense."  *N.J. Dep't of Envtl. Prot.*, 2020 WL 2611539, at *5 (citing *Cuomo,* 771 F.3d at 117).

42.     DuPont is immune from Plaintiffs' state law tort claims[3] based on the government contractor defense, as articulated in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), which stated  that the "uniquely federal interest" of "getting the Government's work done" requires that under certain circumstances, a private contractor must be protected from tort liability associated with its performance of a government procurement contract.  *Id.* at 504–05. The *Boyle* Court held that federal interests preempt state law duties and immunize defendants when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Id.* at 512.

43.     DuPont is likewise immune under the related principle of derivative sovereign immunity articulated in *Yearsley v. W. A. Ross Construction Co.*, 309 U.S. 18 (1940).  Under *Yearsley*, a contractor that acts in conformity with government specifications pursuant to a duly-

---

[3]  Plaintiffs' Amended Complaint alleges the following state tort claims against DuPont: Negligence, Gross Negligence and Recklessness, Private Nuisance, Public Nuisance, Past and Continuing Trespass, and Loss of Consortium and Services.  *See* Exhibit A.

authorized contract is shielded from liability for claims resulting from its performance of the allegedly defective specifications. *See Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*, 883 F.2d 1210, 1215 n.4 (3d Cir. 1989) ("The notion of shielding contractors from liability for defective government specifications . . . dates at least as far back as *Yearsley*…, which held that a contractor building dikes pursuant to a government contract was not liable for erosion if the contractor's performance adhered to the government's specifications." (internal citation omitted)); *New Jersey Dep't of Envtl. Prot.*, 2020 WL 2041382, at *4 (holding that DuPont raised colorable federal defense under *Yearsley* based upon Notice of Removal alleging that it produced chemicals that Plaintiff alleged were released or discharged from site pursuant to valid contracts with the federal government in connection with war efforts).

44.     Given Plaintiffs' allegations, namely, that DuPont is liable in tort due to its production, utilization and discharge of hazardous materials over a 125-year period at Chambers Works, and considering the Chambers Works Contracts requiring DuPont to produce at least some of the hazardous materials identified in the Complaint during that time period, under precise government specifications, using plants and equipment built for the government, it is reasonable for DuPont to assert the government contractor defense articulated in *Boyle* and the related derivative sovereign immunity defense set forth in *Yearsley*.  *See New Jersey Dep't Envtl. Prot. v. Exxon Mobil Corp.*, 381 F. Supp. 2d 398, 404 (2008) (finding that Defendant's government contractor defense was colorable where certain of its production activities during World War II were under the control of the federal government).

### III.   REMOVAL ON THE BASIS OF DIVERSITY IS PROPER BECAUSE DEFENDANT CLEMENTE WAS FRAUDULENTLY JOINED

45.     Additionally, or alternatively, under 28 U.S.C. § 1441 defendants may remove a case filed in a state court to federal court when the district court embracing that state court has original jurisdiction.  Under 28 U.S.C. § 1332, district courts shall have original jurisdiction where the matter in controversy: 1) exceeds the sum or value of $75,000; and 2) is between citizens of different states.

46.     As set forth below, both requirements are satisfied here.  Accordingly, under the doctrine of fraudulent joinder, this case is also removable on the basis of diversity under 28 U.S.C. § 1332 and § 1441.

#### A.     The Amount in Controversy Exceeds $75,000

47.     Based on the allegations on the face of the Complaint, the amount in controversy, exclusive of interest and costs, exceeds $75,000, as required by 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b).

48.     A defendant's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014) (citing 28 U.S.C. § 1446(a)).

49.     A defendant can establish the amount in controversy based on the allegations of the Complaint. *Penn v. Wal-Mart Stores, Inc.*, 116 F. Supp. 2d 557, 562 (D.N.J. 2000); *Buchanan v. Lott*, 255 F. Supp. 2d 326, 331 (D.N.J. 2003).  "[W]here Plaintiff's complaint does not specify an amount of damages, the Court must independently appraise the plaintiff's claims as set forth in the complaint, and determine the amount in controversy 'by a reasonable reading of the value of the

16

rights being litigated.'" *Penn*, 116 F. Supp. at 561 (quoting *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)).

50.     In the Amended Complaint, Plaintiffs request compensatory damages, punitive damages, and non-compensatory damages.  Exhibit A at ¶¶ 108-202.  The Amended Complaint lists ***nine*** total counts: 1) negligence; 2) gross negligence and recklessness; 3) private nuisance; 4) public nuisance; 5) past and continuing trespass; 6) strict liability for abnormally dangerous activities; 7) strict liability for failure to warn; 8) strict liability for defective design; and 9) loss of consortium and services.  *Id*.  Plaintiffs have sued ***nine*** defendants with the potential to add more. *Id.*  Plaintiffs seek to recover damages for at least ***six*** personal injuries including: lung cancer; Barrett's esophagus; diverticulosis; thyroid Hashimoto; profound pain and suffering and mental anguish; and loss of the ability to enjoy life's pleasures.  *Id*. at ¶ 2.  Allegations similar to these have been held to establish, on their face, that the amount in controversy exceeds the jurisdictional requirement.  *See, e.g.*, *Fields v. Zubkov*, 2008 WL 4447098, at *4 (D.N.J. 2008) ("[M]ost removed personal injury cases will likely remain in federal court even if they involve a very minor injury— unless the plaintiff limits her damages below the jurisdictional limit."); *Duaan v. Acme Markets. Inc.*, 2016 WL 266350, at *3 (D.N.J. 2016) (denying plaintiffs' motion to remand because general allegations of "severe and painful bodily injuries" were enough to establish the amount in controversy); *Raspa v. Home Depot*, 533 F. Supp. 2d 514, 522 (D.N.J. 2007) (holding that claims for punitive damages met the amount in controversy requirement, which can be aggregated with compensatory damages to arrive at the amount in controversy); *Avant v. J.C. Penney*, 2007 WL 1791621, at *2 (D.N.J. 2007) ("[T]his Court generally will not remand a personal injury claim in the absence of a waiver by Plaintiff capping the damages at $75,000.").

ME1 39352440v.1

51.     Based on the allegations in the Amended Complaint (*see* Exhibit A at ¶¶ 108-202), therefore, the amount in controversy, exclusive of interests and costs, exceeds $75,000, as required by 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b).

B.      **Excluding Fraudulently-Joined Defendant Clemente, There Is Complete Diversity Between the Parties**

52.     This is a civil action that falls under the Court's original jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship) and may be removed to this Court under 28 U.S.C. §§ 1441 and 1446.

53.     In order for complete diversity to exist, "no plaintiff [may] be a citizen of the same state as any defendant." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (citing *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).

54.     For purposes of diversity of citizenship, a corporation is deemed to be a citizen of both the state of its incorporation and the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1).  The citizenship of an LLC, on the other hand, "is determined by the citizenship of its members." *Lincoln*, 800 F.3d at 105 (citing *Zambelli,* 592 F.3d at 420).  Thus, in order for complete diversity to exist "all of the LLC's members must be diverse from all parties on the opposing side." *Lincoln*, 800 F.3d at 105 (citing *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 185 (3d Cir.2008)).  Citizenship of defendants sued under fictitious names "shall be disregarded" for the purposes of removing on the basis of diversity.  U.S.C. § 1441(b)(1).

55.     Here, Plaintiffs are citizens of New Jersey, and the only Defendant alleged to be a citizen of New Jersey has been fraudulently joined.

56.     The Amended Complaint alleges that Plaintiffs are residents of New Jersey. Exhibit A at ¶ 12.

57.     The Amended Complaint alleges that Solvay Specialty Polymers, USA, LLC is a corporation organized under the laws of the State of Delaware with its principal place of business located in Houston, Texas.  Exhibit A at ¶ 15.  Ausimont Industries, Inc., a citizen of Delaware and Texas, is the sole member of Solvay Specialty Polymers, USA, LLC.

58.     The Amended Complaint alleges that Solvay Solexis, Inc. is the predecessor of Solvay USA and was a corporation duly organized under the laws of the State of Delaware with its principal place of business located in Houston, Texas.  *Id.* at ¶ 16.

59.     The Amended Complaint alleges that Arkema, Inc. is a Pennsylvania corporation with its principal place of business located in Philadelphia, Pennsylvania.  *Id.* at ¶ 18.

60.     At the time Plaintiff commenced this action and at all times since, DuPont is a corporation duly organized under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19899.  *Id.* at ¶ 19.

61.     The Amended Complaint alleges that The Chemours Company is a corporation duly organized under the laws of the State of Delaware with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.  *Id.* at ¶ 20.

62.     The Amended Complaint alleges that The Chemours Company FC, LLC is a corporation duly organized under the laws of the State of Delaware with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.  *Id.* at ¶ 21.  The Chemours Company, a Delaware Corporation, is the sole member of The Chemours Company FC, LLC.

63.    The Amended Complaint alleges that The 3M Company is a corporation duly organized under the laws of the State of Minnesota with its principal place of business in Maplewood, Minnesota.  *Id.* at ¶ 23.

64.    DuPont need not consider the citizenship of the fictitious John Doe Entities #1-20.

65.    Plaintiffs' Complaints name Clemente as defendants,[4] apparently for the sole purpose of defeating diversity jurisdiction.

66.    The Amended Complaint alleges that Anthony Clemente, Inc. (a/k/a "A. Clemente, Inc.") is a corporation organized under the laws of New Jersey with its principal place of business located in New Jersey.  Exhibit A at ¶ 13.

67.    As discussed below, Plaintiffs' allegations and circumstances surrounding Defendant Clemente's inclusion in this case support that Plaintiffs lack colorable claims, or the intent to pursue such claims, against Clemente, and that Clemente was named solely to defeat diversity jurisdiction.  Defendant Clemente's citizenship should therefore be disregarded for purposes of the jurisdictional analysis, pursuant to the doctrine of fraudulent joinder.

68.    Once Defendant Clemente's citizenship is disregarded, complete diversity exists among the parties, and removal is proper under 28 U.S.C. § 1332(a)(1).

---

[4] Records exist for "A. Clemente, Inc." but not for "Anthony Clemente, Inc."  No records suggest that "Anthony Clemente, Inc." was an entity separate from "A. Clemente, Inc."

69.     Accordingly, the present lawsuit may be removed from the Superior Court of New Jersey, Law Division, Salem County, and brought before the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1332(a) and 1441(b).

### C.     Defendant Clemente has been Fraudulently Joined.

70.     It is well-settled that a non-resident defendant's right to remove a case on diversity grounds "cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."  *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (internal citations omitted).  In such a case, the non-resident defendant may show by petition for removal that the joinder is "only a sham or fraudulent device to prevent a removal."  *Id.* (internal citations omitted).

71.     The Third Circuit has recognized this right on many occasions.  "Joinder is fraudulent if 'there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, *or* no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'"  *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)) (emphasis added); *see also Batoff v. State Farm Ins. Co.,* 977 F.2d 848 (3d Cir. 1992); *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108 (3d Cir. 1990).

72.     If the claims against the non-diverse defendant are "wholly insubstantial and frivolous" then joinder is fraudulent.  *Carneys Point Twp. v. E. I. du Pont de Nemours & Co.*, 2017 WL 3189886, at *3 (D.N.J. July 26, 2017) (quoting *Batoff*, 977 F.2d at 851).  To determine whether joinder is fraudulent, the court is to "assume as true all factual allegations of the complaint."  *Carneys Point*, 2017 WL 3189886, at *3 (quoting *Batoff*, 977 F.2d at 851).

73.     Clemente ceased to exist more than two decades before Plaintiffs filed their initial Complaint.  Public records reflect the following:

- In August 1996, Clemente filed its last mandatory annual report with the New Jersey Department of the Treasury.  (*See* Exhibit C).

- In October 1998, Clemente filed for Chapter 7 Bankruptcy (liquidation).

- Clemente's bankruptcy case ended on May 25, 1999.  (*See* Exhibit D).

- In July 2004, the New Jersey Department of the Treasury revoked Clemente's corporate status.  (*See* Exhibit E).

74.     On October 25, 2021 Plaintiffs served the former Treasurer of Clemente, Beverly Booth, with the initial Complaint.  Clemente has not filed an appearance in the case captioned as *Mesogianes, et. al. v. Clemente, Inc., et. al.*, Case No. SLM-L-000199-21.

75.     Clemente has not responded to the Complaint in the three months since it was served on its former Treasurer.  Despite this, Plaintiffs have not pursued their claims against Clemente to this point.

76.     Counsel for the Plaintiffs in this action have filed multiple personal-injury complaints in this Court that are substantively similar to Plaintiffs' Amended Complaint.  These federal-court actions were brought on behalf of individuals purportedly residing in the same general geographic area as Plaintiffs for alleged exposure to PFAS and the other categories of substances listed in Plaintiffs' Amended Complaint, and also name DuPont, Solvay Specialty Polymers, USA, LLC; Solvay Solexis, Inc.; Arkema, Inc.; The Chemours Company; The

22

Chemours Company FC, LLC; and The 3M Company as defendants.  The primary substantive difference between Plaintiffs' Amended Complaint and these prior and subsequently filed federal court cases is that the federal court complaints do not identify Clemente as a defendant or otherwise reference Clemente.[5]

77.     Given that Plaintiffs were on notice at the filing of the initial Complaint that Clemente was a dissolved, liquidated corporation, that Plaintiffs have not pursued their claims against Clemente despite Clemente's failure to respond to the Complaint, that any claims Plaintiffs might have had against Clemente would be long-since barred by the operative statutes of limitations, and that Counsel for Plaintiffs has not added Clemente to any of its similar federal cases, the only apparent explanation for Plaintiffs' naming Clemente as a party is as a mechanism to oppose diversity jurisdiction.  The circumstances are not compatible with a good-faith intent to prosecute claims against Clemente, and its inclusion in this case thus constitutes fraudulent or sham joinder pursuant to the doctrine identified in paragraph 71.

78.     Because inclusion of Clemente in this case constitutes fraudulent joinder, its New Jersey citizenship does not destroy complete diversity, and it need not consent to removal.

---

[5] These federal court cases are:
  1)  *Kimberly Bond, et. al. v. Solvay Specialty Polymers, USA, LLC, et. al.*
      Civil Action No.: 1:20-cv-08487-NLH-KMW;
  2) *Theresa Slusser, et. al. v. Solvay Specialty Polymers, USA, LLC, et. al.*
      Civil Action No.: 1:20-cv-11393-NLH-KMW;
  3) *Tammy O'Leary, et. al. v. Solvay Specialty Polymers, USA, LLC, et. al.*
      Civil Action No.: 1:21-cv-00217-NLH-KMW;
  4) *Carly Corrar, et. al. v. Solvay Specialty Polymers, USA, LLC, et. al.*
      Civil Action No.: 1:21-cv-00452-NLH-KMW;
  5) *Shirley Bond v. Solvay Specialty Polymers, USA, LLC, et. al.*
      Civil Action No.: 1:21-cv-11203-NLH-KMW; and
  6) *Nicole Bond v. Solvay Specialty Polymers USA, LLC*, et al.,
      Civil Action No.: 1:21-cv-20755-NLH-AMD.

79.     In sum, this action also may be removed from the Superior Court of New Jersey, Law Division, Salem County to this Court by DuPont in accordance with the provisions of 28 U.S.C. §§ 1332(a), 28 U.S.C. § 1441(a) and the other federal statutes referenced herein because (i) this action is a civil action pending within the jurisdiction of the United States District Court for the District of New Jersey; (ii) this action is between citizens of different states; and (iii) the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

## IV.     DUPONT HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

80.     DuPont files this Notice of Removal "together with a copy of all process, pleadings, and orders served upon it" during the state-court proceedings as Exhibits A-B.  *See* 28 U.S.C. § 1446(a).

81.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 110 and 1441(a) because this Court is the United States District Court for the district and division embracing the Superior Court of New Jersey, Law Division, Salem County, where the state court complaint was filed.

82.     On December 27, 2021, Plaintiffs served DuPont with a Summons and Amended Complaint.  DuPont had not previously been served with process.  Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b).

83.     "[Removing Defendant] is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1)."  *See, e.g.*, *Durham*, 445 F.3d at 1253; *Hilbert v. McDonnell Douglas Corp.,* 529 F. Supp. 2d 187, 195 (D. Mass. 2008); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS),

24

1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999).  The consent of the other defendants is not required because removal does not proceed "solely under [28 U.S.C.] section 1441(a)."  28 U.S.C. § 1446(b)(2)(A).

84.     Pursuant to 28 U.S.C. § 1446(d), DuPont will promptly serve written notice of this Notice of Removal upon counsel for all parties and file a copy of this Notice of Removal with the Clerk of the Superior Court of New Jersey, Law Division, Salem County.

85.     By filing a Notice of Removal in this matter, DuPont does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and DuPont specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

86.     DuPont reserves the right to amend or supplement this Notice of Removal.

87.     If there are any questions concerning this removal, DuPont respectfully requests the opportunity to present briefing and oral argument in support of removal.

/s/ Lanny S. Kurzweil

Lanny S. Kurzweil
Ryan Richman
McCarter & English, LLP
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Telephone: (973) 639-2044
Facsimile: (973) 297-3810
lkurzweil@mccarter.com
rrichman@mccarter.com
*Attorneys for Defendants, E. I. du Pont de Nemours and  Company, The Chemours Company, and The Chemours Company FC, LLC*

Dated:  January 26, 2022

# EXHIBIT A

**SUPERIOR COURT OF NEW JERSEY - eCOURTS**

The following was filed by LAKIND, ARNOLD, C on 11/15/2021 at 9:33 AM:

| | |
|---|---|
| Plaintiff Name: | WILLIAM MESOGIANES, RENEE  MESOGIANES |
| Defendant Name: | A. CLEMENTE, INC., ANTHONY CLEMENTE, INC. |
| Case Caption: | MESOGIANES RENEE  VS A. CLEMENTE, INC. |
| Case Number: | SLM-L-000199-21 |
| Docket Text: | AFFIDAVIT OF SERVICE submitted by LAKIND, ARNOLD, C of SZAFERMAN LAKIND BLUMSTEIN & BLADER PC on behalf of WILLIAM MESOGIANES, RENEE  MESOGIANES against ANTHONY CLEMENTE, INC. |
| Transaction ID: | LCV20212663488 |

**Notice has been electronically mailed to:**

| | | |
|---|---|---|
| Plaintiff Attorney | ARNOLD C LAKIND | ALAKIND@SZAFERMAN.COM |
| | | SKLIWINSKI@SZAFERMAN.COM |
| | | CMYLES@SZAFERMAN.COM |
| Plaintiff Attorney | ARNOLD C LAKIND | ALAKIND@SZAFERMAN.COM |
| | | SKLIWINSKI@SZAFERMAN.COM |
| | | CMYLES@SZAFERMAN.COM |

**Notice was not electronically mailed to:**

| | |
|---|---|
| Defendant | A. CLEMENTE, INC. |
| Defendant | ANTHONY CLEMENTE, INC. |

Login to eCourts to view the case jacket. You will need a valid user ID(Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey - Civil Part.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

 **CT Corporation**

**Service of Process Transmittal**
12/27/2021
CT Log Number 540793978

**TO:**   Julie Barry
Corteva Agriscience
PO BOX 30649, 974 CENTRE RD
WILMINGTON, DE 19805-7649

**RE:**   **Process Served in New Jersey**

**FOR:**   E. I. du Pont de Nemours and Company  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: RENEE MESOGIANES and WILLIAM MESOGIANES, h/w // To: E. I. du Pont de Nemours and Company |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # SLML00019921 |
| **NATURE OF ACTION:** | Product Liability Litigation - Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, West Trenton, NJ |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/27/2021 at 02:13 |
| **JURISDICTION SERVED :** | New Jersey |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Mary Dougherty  mary.dougherty@corteva.com |
| | Email Notification,  Tom Warnock  thomas.a.warnock@corteva.com |
| | Email Notification,  Dottie Perillo  dorothy.f.perillo@corteva.com |
| | Email Notification,  Catharine Gillespie  catharine.e.gillespie@corteva.com |
| | Email Notification,  Joe Alberts  joseph.alberts@corteva.com |
| | Email Notification,  Julie Barry  juliann.a.barry@corteva.com |
| | Email Notification,  Angie Stanke  angie.stanke@corteva.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>820 Bear Tavern Road<br>West Trenton, NJ 08628<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

 **CT Corporation**

**Service of Process Transmittal**
12/27/2021
CT Log Number 540793978

**TO:**    Julie Barry
Corteva Agriscience
PO BOX 30649, 974 CENTRE RD
WILMINGTON, DE 19805-7649

**RE:**    **Process Served in New Jersey**

**FOR:**   E. I. du Pont de Nemours and Company  (Domestic State: DE)

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:** Mon, Dec 27, 2021

**Server Name:** Drop Service

| Entity Served | E. I. DUPONT DENEMOURS & COMPANY |
|---|---|
| Case Number | SLM19921 |
| Jurisdiction | NJ |



# SZAFERMAN LAKIND

Szaferman, Lakind, Blumstein & Blader, P.C.
Attorneys at Law

101 Grovers Mill Road, Suite 200
Lawrenceville, NJ 08648
P: 609.275.0400
F: 609.275.4511
www.szaferman.com

Arnold C. Lakind
Barry D. Szaferman
Jeffrey P. Blumstein#
Steven Blader#
Brian G. Paul+
Craig J. Hubert++
Michael R. Paglione*
Lionel J. Frank**
Jeffrey K. Epstein+
Stuart A. Tucker
Scott P. Borsack***
Daniel S. Sweetser*
Robert E. Lytle
Janine G. Bauer***

Daniel J. Graziano Jr.
Bruce M. Sattin***
Robert P. Panzer
Benjamin T. Branche*
Robert G. Stevens Jr.**
Michael D. Brottman**
Janine Danks Fox*
Thomas J. Manzo**
Robert L. Lakind***
Brian A. Heyesey
Lindsey Moskowitz Medvin**
Christopher S. Myles**
Marc A. Brotman**
Max H. Steinberg

Of Counsel
Stephen Skillman
Linda R. Feinberg
Anthony J. Parrillo
Nathan M. Edelstein
Jeffrey M. Hall
Kim A. Otis

Counsel
Bhuchar Law Firm
www.bhucharlaw.com
Tel(609)514-5195

Huff, Moran & Orron, LLC
1246 South River Road
Cranbury, NJ 08512
Tel(609)655-3600

*NJ & PA Bars
**NJ & NY Bars
***NJ, NY & PA Bars

+Certified Matrimonial Attorney
++Certified Civil and Criminal Trial
Attorney

#Retired

December 21, 2021

E.I. DuPont deNemours & Company c/o
C T Corporation System
820 Bear Tavern Road
West Trenton, NJ 08628

Re: Renee Mesogianes and William Mesogianes v. A. Clemente, Inc.; Anthony Clemente, Inc.; Solvay Specialty Polymers, USA, LLC; Solvay Solexis, Inc.; Arkema, Inc.; E.I. DuPont DeNemours & Company; The Chemours Company; The Chemours Company FC, LLC; The 3M Company and John Doe Entities #1-20

Docket No. SLM-199-21

Dear Sir or Madam:

Enclosed in service upon you as the Registered Agent for E.I. duPont deNemours & Company is the First Amended Complaint in the above matter and a summons along with a copy of the case information statement previously filed in this matter.

Thank you.

Very truly yours,

SZAFERMAN, LAKIND,
BLUMSTEIN & BLADER, P.C.
s/Arnold C. Lakind
Arnold C. Lakind

ACL/s
Enclosures

## SUMMONS

Attorney(s) <u>Szaferman, Lakind, Blumstein & Blader, P.C.</u>

Office Address <u>101 Grovers Mill Road, Suite 200</u>

Town, State, Zip Code <u>Lawrenceville, NJ 08648</u>

Telephone Number <u>609-275-0400</u>

Attorney(s) for Plaintiff <u>Renee Mesogianes and</u>

<u>William Mesogianes,</u>

|  Plaintiff(s) |

vs.

A. Clemente, Inc., et al.,

|  Defendant(s) |

# Superior Court of New Jersey

Salem [▾] County

Law     Division

Docket No: <u>SLM-199-21</u>

# CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

                                 */s/Michelle M. Smith*
                                 Clerk of the Superior Court

DATED: <u>12/21/2021</u>

Name of Defendant to Be Served: <u>E.I. DuPont deNemours & Company, c/o CT Corporation System</u>

Address of Defendant to Be Served: <u>820 Bear Tavern Road, West Trenton, NJ 08628</u>

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

```
SALEM CO CIVIL CASE MGMT
SUPERIOR COURT LAW DIV
92 MARKET STREET
SALEM          NJ 08079
                                    TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (856) 878-5050
COURT HOURS  8:30 AM - 4:30 PM


                       DATE:   OCTOBER 20, 2021
                       RE:     MESOGIANES RENEE  VS A. CLEMENTE, INC.
                       DOCKET: SLM L -000199 21

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

     DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON BENJAMIN D. MORGAN

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     001
AT:  (856) 878-5050.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                       ATTENTION:

                            ATT: ARNOLD C. LAKIND
                            SZAFERMAN LAKIND BLUMSTEIN & B
                            101 GROVERS MILL RD
                            STE 200
                            LAWRENCEVILLE    NJ 08648


ECOURTS
```

**Phillips & Paolicelli, LLP**
747 3rd Avenue, 6th Floor
New York, New York, 10017
Phone: 212-388-5100;
Fax 212-388-5200
Attorneys for Plaintiff
By: Steven Phillips, Esq.
    Victoria E. Phillips, Esq.
    Melissa Stewart, Esq.
    (Pro hac vice to be applied for)

**Szaferman Lakind**
  **Blumstein & Blader, P.C.**
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08534
Phone: 609-275-0400;
Fax: 609-275-4511
Attorneys for Plaintiff
By: Arnold Lakind, Esq.
    (Attorney ID# 002581973)
    Robert Lytle, Esq.
    (Attorney ID# 046331990)

**Cooney & Conway**
120 N. Lasalle Street, Suite 3000
Chicago, Illinois 60602
Phone:  312-236-6166;
Fax 312-236-3029
Attorneys for Plaintiff
By:  Kevin Cooney, Esq.
(Pro hac vice to be applied for)
    Michael Lubeck, Esq.
(Pro hac vice to be applied for)

| | |
|---|---|
| RENEE MESOGIANES and WILLIAM MESOGIANES, h/w <br><br>         Plaintiffs, <br><br> v. <br><br> A  CLEMENTE, INC.; ANTHONY CLEMENTE, INC.; SOLVAY SPECIALTY POLYMERS, USA, LLC; SOLVAY SOLEXIS, INC.; ARKEMA, INC.; E.I. DU PONT DE NEMOURS & COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; THE 3M COMPANY; AND JOHN DOE ENTITIES #1-20 <br><br>         Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION - SALEM COUNTY DOCKET NO. SLM-L-199-21 <br><br><br>       CIVIL ACTION <br><br><br><br><br> **FIRST AMENDED COMPLAINT AND JURY DEMAND** |

5698793.1

Plaintiffs, Renee Mesogianes and William Mesogianes, by way of Amended Complaint against A. Clemente, Inc., Anthony Clemente, Inc., Solvay Specialty Polymers, USA, LLC, Solvay Solexis, Inc., Arkema, Inc., E.I. Du Pont De Nemours & Company, The Chemours Company, The Chemours Company FC, LLC, The 3M Company, and John Doe Entities #1-20 (collectively "Defendants") say that:

**A.    The Nature of the Action**

1.    This is a civil action brought by Renee Mesogianes and William Mesogianes, who seeks to recover damages for personal injuries suffered by Plaintiffs.

2.    Plaintiffs seek to recover damages for personal injuries suffered by Renee Mesogianes including but not limited to:

    a.    Lung cancer;

    b.    Barrett's Esophagus;

    c.    Diverticulosis;

    d.    Thyroid hashimoto;

    e.    Profound pain and suffering and mental anguish; and

    f.    Loss of the ability to enjoy life's pleasures.

3.    Those injuries were foreseeably caused by the Defendants' misconduct, including their intentional discharge, use, and/or disposal of toxic and dangerous chemicals and substances.

4.    These chemicals and substances include but are not limited to:

2

    a.   poly- and perfluoroalkyl substances ("PFAS"),

        (among them perfluorononanoic acid ("PFNA"),

        perfluorooctanoic acid ("PFOA"), and

        perfluorooctanesulfonic acid ("PFOS"), as well as

        their replacement compounds, including but not

        limited to "GenX").

    b.   halogenated hydrocarbons (e.g., dichloromethane, or

        methylene chloride, trichloroethylene,

        perchlorethylene);

    c.   heavy metals (e.g., lead, mercury, arsenic, copper,

        antimony);

    d.   freons;

    e.   industrial alcohols and solvents (e.g., acetone,

        toluene, acetonitrile, ethyl acetate, heptane,

        hexane, isopropynol, benzene, ethylbenzene,

        xylene);

    f.   numerous mixtures and wastes consisting of multiple

        compounds, substances, and/or products (e.g.,

        paints, dyes, fuels, explosives, ammunition,

        hereafter collectively "mixtures" or "waste");

    g.   polycyclic aromated hydrocarbons ("PAHs"); and

    h.   particulate matter and airborne waste.

5.   These substances and other toxins, (hereafter "toxins")
individually and in mixtures have the capacity to cause:

a.  adverse reproductive, neurological, and
developmental outcomes including but not limited to
birth defects, developmental delays, intellectual
disability, autism spectrum disorders, genetic
damage, embryonic tumors, and effect on infant
birth weights;

b.  liver, kidney, and immunological disorders and
illness;

c.  impaired resistance to infectious disease;

d.  cardiovascular disease and disorders;

e.  metabolic diseases and disorders;

f.  increased cholesterol levels;

g.  endocrine and thyroid disease and disorders and
hormone disruption;

h.  asthma, allergies, and respiratory disease;

i.  skin disorders;

j.  orthopedic injuries;

k.  gastrointestinal illness;

l.  cancers and severe non-malignant disorders.

6.  Further, these toxins have the capacity to act in an
additive or synergistic fashion such that mixed exposures enhance
or even multiply their capacity to inflict and accelerate the
harm(s) of the type described above.

4

7.   In addition, the mechanisms by which these relevant toxins inflict harm are many, and include:

        a.   apoptosis (cell death);

        b.   oxidative stress;

        c.   genotoxicity (spontaneous or de novo mutation);

        d.   epigenetic change;

        e.   diminished cellular nourishment;

        f.   impaired cell to cell communication;

        g.   endocrine disruption;

        h.   impaired or excessive immune responses;

        i.   intrauterine growth retardation;

        j.   impaired organogenesis; and

        k.   the capacity to cross placental and brain barriers.

8.   There are no safe levels of exposures to these toxins, especially with mixed and prolonged exposures.

9.   While exposures to these toxins (e.g., quantum of exposure, duration(s) of exposure and timing of exposure relative to the adverse outcome) typically operate along a biological gradient (dose-response), such that increases in quantum, duration or timing increase the potential for harm, even a single exposure at vanishingly small quanta, unfortunately timed, has the capacity to cause the above described and other injuries.  Accordingly, although the calculation of the precise dose of exposure to each toxin or mixture (and to the aggregate of all exposures) is not

presently known, these exposures, from both a qualitative and
quantitative perspective, are more than sufficient to have caused
the injured Plaintiffs' injuries.

10. As a consequence of Defendants' intentional, knowing,
reckless, grossly negligent, and negligent acts and omissions
described herein, resulting in the contamination of the
environment, water, air, and soil, including but not limited to
Plaintiffs' water supply, Plaintiff, Renee Mesogianes seeks to
recover compensatory and punitive damages for the personal
injuries suffered by Plaintiff, Renee Mesogianes, and Plaintiff,
William Mesogianes, seeks damages for loss of consortium and
support.

11. The external routes of exposure which caused the
injuries for which Defendants are responsible, involved airborne
dispersion, groundwater, surface water, contamination of domestic
water supplies, soil contamination, and vapor intrusion in and
around the Plaintiffs' residence and adjacent neighborhoods.

**B.    The Parties:**

12  Since in or about 1992, Plaintiffs, who are adults,
have resided at and been domiciled at 16 Henry Avenue,
Pennsville, NJ 08070. From approximately 1971 to 1991, Renee
Mesogianes resided at and was domiciled at a home located at 162
Boston Road, Pennsville, NJ 08070 (the "Property").

6

13.   Defendant, Anthony Clemente, Inc. (a/k/a "A. Clemente, Inc.," hereafter referred to as "Clemente") is a corporation organized under the laws of the State of New Jersey and is the owner of block 247, lots 1 and 2 also known as 211 South Pennsville Auburn Road, in the Township of Carneys Point, County of Salem, State of New Jersey (the "Clemente Property").

14.   The Clemente Property has been used for the disposal of hazardous waste generated by E.I. Du Pont de Nemours & Company and others, which hazardous waste has migrated on to Plaintiffs' property causing exposure to a variety of harmful substances and the profound personal injuries described above sustained by Plaintiff, Renee Mesogianes.

15.   Defendant Solvay Specialty Polymers, USA, LLC ("Solvay USA") is a corporation duly organized under the laws of the State of Delaware with its principal place of business located in Houston, Texas.

16.   Defendant Solvay Solexis, Inc. ("Solvay Solexis") is the predecessor of Solvay USA and was a corporation duly organized under the laws of the State of Delaware with its principal place of business located in Houston, Texas.

17.   Defendants Solvay USA and Solvay Solexis will collectively be referred hereinafter as "Solvay".

7

18. Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation with its principal place of business at 2000 Market Street, Philadelphia, PA 19103.

19. Defendant E.I. du Pont de Nemours & Company ("DuPont") is a corporation duly organized under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, DE 19805.

20. Defendant The Chemours Company ("Chemours Co.") is a corporation duly organized under the laws of the State of Delaware with its principal place of business located at 1007 Market Street, Wilmington, DE 19899.

21. Defendant The Chemours Company FC, LLC ("Chemours FC") is a corporation duly organized under the laws of the State of Delaware with its principal place of business located at 1007 Market Street, Wilmington, DE 19899.

22. Defendants Chemours Co. and Chemours FC will collectively be referred hereinafter as "Chemours".

23. Defendant The 3M Company ("3M") is a corporation duly organized under the laws of the State of Minnesota with its principal place of business at 2501 Hudson Road, Maplewood, MN 55144.

24. Defendants John Doe Entities #1-20 are fictitious names of corporations, companies, partnerships, or other business entities or organizations whose identities cannot be ascertained

8

as of the filing of this Amended Complaint, certain of which are successors to, predecessors or alter egos of, or are otherwise related to, the identified Defendants in this matter or which are otherwise liable pursuant to the causes of action set forth herein as a result of their intentional, knowing, reckless and/or negligent release, discharge, storage and/or disposal of the toxic and hazardous chemicals described in paragraph 4 above into the surrounding air, soil and water, thereby causing the contamination of the air, soil, surface water, and ground water in and around Plaintiffs' residence and adjacent neighborhoods.

C.  **Background**

25.  Plaintiff, Renee Mesogianes, suffers from profound personal injuries described above.

26.  These injuries were all proximately caused by the above Defendants' misconduct, including their intentional, reckless and/or negligent discharge, storage, and/or acceptance for disposal of toxic and hazardous chemicals including, but not limited to the toxins described in paragraph 4 above.

27.  With respect to the PFAS, PFOA PFNA and PFOS chemicals, the United States Environmental Protection Agency ("EPA") has identified 3M as the dominant global producer of PFOA and related chemicals.

28.  3M manufactures at least eighty-five (85%) percent of total worldwide volumes of PFOA and related chemicals.

9

29.  Poly- and perfluoroalkyl substances ("PFAS") are man-made chemicals.

30.  PFAS have been manufactured and used in the United States since the 1940s.

31.  PFAS have fire-resistant properties.

32.  PFAS act as oil, grease, and water repellants.

33.  PFAS have been used to make many household products such as Teflon®, Gore-Tex® Stainmaster®, Scotchgard®, and Tyvek®.

34.  PFAS compounds are a substantial threat to the environment and human health.

35.  Some PFAS have been classified as carcinogenic.

36.  Studies report that PFAS exposure  and exposures to the other toxins have the capacity to cause *inter alia*:  testicular cancer, kidney cancer, liver cancer, brain cancer, lymphomas, leukemia, breast cancer, lung cancer, autoimmune disorders, endocrine disorders, developmental and genetic defects to fetuses, developmental defects to breastfed babies, reduced vaccine response, neurological damage, central nervous system damage, cognitive impairment, increased cholesterol, and increased liver enzymes and a host of other disorders including those suffered by the injured Plaintiff.

37.  PFAS compounds and certain other toxins are resistant to degradation.

10

38. PFAS compounds and certain other toxins persist indefinitely in the environment.

39. PFAS compounds and certain other toxins or their metabolites bioaccumulate in living tissue.

40. People who consume PFAS and other toxins via drinking water and are otherwise exposed accumulate increasing concentrations of PFAS and other toxins or their metabolites in their blood.

41. For decades, Defendants and their predecessors in interest have known (or should have known) of the highly toxic characteristics of PFAS and other toxins.

42. The New Jersey Department of Environmental Protection ("NJDEP") has devoted and is continuing to identify and investigate the presence of PFAS and other toxins in New Jersey's environment, as well as to monitor, treat, clean up, and/or remove PFAS or other toxins in impacted areas.

43. Chemicals including but not limited to "GenX" have been substituted by Defendants (other than Clemente) in lieu of their PFAS chemicals.

44. These replacement chemicals are being inaccurately touted as short-chain and having shorter half-lives.

45. These replacement chemicals do not break down in the environment.

11

46.    PFAS compounds and their replacement chemicals have also been detected in drinking water, groundwater, and surface waters.

47.    In 2009, EPA issued preliminary health advisory values for PFOA and PFOS in drinking water of 400 parts per trillion ("ppt") and 200 ppt, respectively.

48.    In 2016, EPA lowered its advisories for PFOA and PFOS to 70 ppt collectively total in further recognition of their extreme danger at even the most miniscule doses.

49.    In 2018 the United States Department of Health and Human Services, Agency for Toxic Substances and Disease Registry ("ATSDR") released draft minimum risk levels of 21 ppt for PFOA and PFNA, and 14 ppt for PFOS.

50.    NJDEP has adopted a specific groundwater Quality Standard ("GWQS") of 10 ppt for PFNA and a Maximum Contaminant Level ("MCL") of 13 ppt.

51.    NJDEP added PFNA to its List of Hazardous Substances on January 16, 2018.

52.    On March 13, 2019, the NJDEP established interim specific groundwater quality criteria for PFOA and PFOS of 10 ppt.

53.    NJDEP has proposed adding PFOA and PFOS to the List of Hazardous Substances.

54.    NJDEP also issued a Statewide PFAS Directive, Information Request and Notice to Insurers against Defendant Solvay Specialty Polymers USA, LCC, Defendant Solvay Solexis,

Inc., Defendant E.I. du Pont de Nemours & Company, Dowdupont, Inc., DuPont Specialty Products USA, LLC, Defendant The Chemours Company FC, LLC, Defendant The Chemours Company, and Defendant The 3M Company "to notify them that the Department believes them to be responsible for the significant contamination of New Jersey's natural resources, including the air and waters of the State, with poly- and perfluoroalkyl substances ("PFAS")…" which encompass the air and water utilized by plaintiffs.

55. The other toxins have also been the subject of repeated governmental evaluation and regulation by agencies of the federal government, the State of New Jersey, other state governments, and foreign regulatory bodies. Defendants are believed to have violated such regulations at relevant times and in relevant localities.

D. **Solvay and Arkema's West Deptford Facility**

56. Solvay has been the owner and operator of a manufacturing facility located at 10 Leonard Lane, West Deptford, NJ 08085 ("the West Deptford facility") from 1990 to the present.

57. Before 1990, Arkema owned and operated the West Deptford facility.

58. Solvay manufactured polyvinylidene fluoride ("PVDF"), which is another PFAS compound, at the West Deptford facility.

13

59. PVDF is a specialty plastic used in conjunction with lithium batteries, medical and defense uses, semi-conductors, or other instances when a higher level of purity is required.

60. On information and belief, Arkema manufactured PVDF and other high- performance materials at the West Deptford facility prior to 1990.

61. Solvay's West Deptford facility was considered to have the second highest capacity in the world for purposes of using Surflon S-11 to make PVDF, which is composed of approximately 74% PFNA.

62. In connection with its operations, Solvay released vast amounts of PFNA and other toxins into the surrounding air, soil and water contaminating its site, off-site properties including Plaintiffs' Property, and New Jersey's natural resources with the PFNA chemical.

63. At relevant times, Solvay also used sodium perfluorooctanoate (NaPFO) as a surfactant at the West Deptford Facility, which was supplied to it by 3M.

64. NaPFO degrades into PFOA.

65. As a result of its operations, Solvay released vast amounts of PFOA into the surrounding air, water and soil contaminating the site, off-site properties including the Property, and contaminating New Jersey's natural resources with the PFOA chemical.

66. Since at least 1991, Defendant Solvay knew that it was discharging large amounts of PFNA and other toxins into the environment from their West Deptford, New Jersey facility located at 10 Leonard Lane, West Deptford, NJ 08086.

67. Prior to 1990, and at relevant times, as a result of their operations, Arkema released massive amounts of PFOA into the surrounding air, soil and water contaminating their site, off-site properties including the Property, and contaminating New Jersey's natural resources with the PFOA and other relevant toxins

**E    DuPont and Chemours' Chamber's Works Facility**

68. For over a century, from 1891 to 2015, DuPont owned and operated Chambers Works, 67 Canal Road and Route 130, located in Pennsville and Carneys Point Townships, New Jersey.

69. DuPont produced, used, and discharged into the environment approximately 1,200 separate chemicals, pollutants, and other hazardous substances from the Chambers Works facility. Upon information and belief, in addition to the PFOA/PFAS chemicals, many, if not most of the other toxins discussed above were also wrongfully produced, used and discharged into the environment from this facility.

70. PFOA was used at Chambers Works beginning in the late 1950s to, among other things, manufacture fluoroelastomers, perfluoroelastomers and specialty fluoroelastomers used in a

15

variety of consumer and other products for their chemical non-stick and heat-resistant properties.

71. Telomers were used and manufactured at Chambers Works.

72. PFOA is a by- product of the telomer manufacturing process.

73. At relevant times, 3M supplied DuPont with PFOA.

74. DuPont also accepted large quantities of PFOA-containing waste from off-site facilities and discharged this and other toxic waste, along with wastewater from its on-site PFOA- related processes, through its wastewater treatment plant.

75. As a result of its operations, for decades, DuPont released massive amounts of PFOA as well as other PFAS, including PFNA, and other toxins from Chambers Works into the surrounding air, water and soil, contaminating the site, off-site properties including the Property, and contaminating New Jersey's natural resources.

76. In 2015, DuPont transferred its Chambers Works facility to Chemours.

77. DuPont continued to operate at the location pursuant to an industrial lease through which DuPont was the tenant and Chemours FC was the landlord.

78. Chemours accepted the transfer of DuPont's Chambers Works facility with the knowledge that the site had been wrongfully contaminated with PFAS and other toxic substances.

16

79. Chemours accepted the transfer of DuPont's Chambers Works facility with the knowledge that it was discharging PFAS and other toxins into the surrounding air and water contaminating off-site properties including the Property, and contaminating New Jersey's natural resources.

80. Sampling of residential drinking water wells in the surrounding area revealed contamination many miles away from the Chambers Works facility, with a substantial number of wells exceeding applicable screening criteria for concentrations of PFOA, PFNA, or PFOA and PFOS combined.

81. NJDEP has declared that: "DuPont has not been working in good faith to address the contamination it released into New Jersey's environment. Instead, DuPont knowingly concealed the true nature of the chemicals it discharged, while simultaneously moving forward with a corporate reorganization that moved its 'performance chemicals' business (including its PFAS-related product lines), the [Chambers Works facility] itself, and the associated liabilities to Chemours [Co.] and Chemours FC and away from DuPont (and tens of billions of dollars of its assets). DuPont has concealed from the Department and the community the extent and nature of the environmental injuries its contaminants caused."

82. NJDEP also declared that "[b]oth DuPont and The 3M Company ("3M") put their profits above the public health, safety, and the environment of New Jersey."

83. DuPont and 3M committed acts and omissions with respect to PFAS and other toxins with actual malice and/or with a wanton and willful disregard of people who foreseeably might be harmed by those acts or omissions.

84. This conduct was performed with greed and in callous disregard of the public health as well as Plaintiffs' health and well-being, in order to maximize profit, avoid necessary expense, to promote sales of their products and to reduce or eliminate their obligations to otherwise remediate or prevent the discharge of PFAS into the environment and Plaintiffs' private wells.

85. From studies of its own workers, Defendant, DuPont, knew that PFOA and other toxins were harmful to humans both alive and in utero.

86. Defendants, DuPont, knew that PFOA and other toxins were being discharged into the environment, including the air, soil, groundwater, surface water and drinking or household water supply.

87. Defendants DuPont failed to disclose the risks to regulators, the public or the Plaintiffs.

88. In a 2003 report on Chambers Works, DuPont disclosed that PFOA was present in groundwater throughout the facility and at the perimeter up to 46,000 ppt.

18

89. However, DuPont falsely characterized those results as showing "very low levels" and that "PFOA is being contained on-site by the site groundwater containment system."

F.   3M

90. From as early as the 1970s, Defendant, 3M, knew that PFOA and PFOS and other toxins were harmful to people and the environment based on its own studies and review of relevant scientific and medical literature.

91. Defendant 3M knew that PFAS and other toxins had the capacity to and foreseeably would leach into groundwater and contaminate the environment.

92. As early as 1960, an internal 3M memo admitted that its chemicals "[would] eventually reach the water table and pollute domestic wells."

93. 3M actively sought to suppress scientific research on the hazards associated with PFAS products and other toxins.

94. 3M intentionally mounted a campaign to control the scientific dialogue on the exposure, fate, effects, human health, and environmental risks of its PFAS products and other toxins.

95. At least one scientist funded by 3M reported his goal as "keep[ing] 'bad' papers [regarding PFAS] out of the literature" because "in litigation situations" those articles "can be a large obstacle to refute."

19

G. **Defendants' Contamination of Groundwater, Surface Water, Drinking Water, Air and Soil**

96. For decades, Defendants knew or should have known of the severe and adverse health and environmental effects and impacts of PFAS and other toxins.

97. Despite that knowledge, Defendants continued to use PFAS and other toxins in products and release them into the environment.

98. In 2006, the NJDEP conducted its first statewide occurrence study of PFAS in drinking water.

99. That study revealed that 65% of sampled drinking water sources had PFOA compounds present, and 30% had PFOS compounds present.

100. In the samples tested, PFOA was detected up to 100 ppt, PFOS was detected up to 43 ppt, and PFNA was detected up to 96 ppt.

101. NJDEP sampled 992 private wells as of June 2018 for PFAS and detected the following:

   a.   PFOA in 427 wells (43%) with 284 of those wells having levels of PFOA exceeding the proposed MCL for PFOA; and

   b.   PFOS in 304 wells (31%) with 40 of those wells having levels of PFOS exceeding the proposed MCL for PFOS.

20

102. Four hundred of those sampled wells were sampled as part of the remedial investigation emanating from Solvay's West Deptford facility.

103. Studies show that exposure to PFAS have the capacity to cause *inter alia* testicular cancer, kidney cancer, liver cancer, autoimmune disorders, endocrine disorders, genetic damage, developmental birth defects to fetuses, developmental defects to breastfed babies, reduced vaccine response, increased cholesterol, and increased liver enzymes.

104. The routes of exposure to which Plaintiff was exposed to the relevant toxins include:

      a.    the ingestion of drinking water,

      b.    the inhalation of vapors and particulate matter, and

      c.    dermal contact and skin absorption.

105. Plaintiff, William Mesogianes, has also suffered damages in his derivative capacity as the spouse of Plaintiff, Renee Mesogianes.

106. Defendants' misconduct, (both individually and collectively) and the resulting wrongful exposures, proximately caused each Plaintiffs' injuries and damages as described above.

107. As a consequence, each Defendant is individually and jointly and severally liable to Plaintiffs for both compensatory and punitive damages.

21

## Count I: Negligence

### Plaintiffs v. All Defendants and
### John Doe Entities #1-20

108. The allegations contained in all preceding paragraphs are incorporated herein as if fully restated.

109. Defendants knew or should have known that the use of PFAS and/or the discharge of PFAS and other toxins into the air, soil, groundwater and drinking or household water are hazardous to human health and the environment.

110. Defendants further knew or should have known that it was unsafe and/or unreasonably dangerous to discharge PFAS and other toxins into the environment in close proximity to surrounding residential communities, including the Property.

111. Defendants had a duty to take all reasonable measures to ensure that PFAS and other toxins would be effectively contained and not discharged into the surrounding environment.

112. Defendants had a duty to operate and manage their facilities and related wastes in such a way as to not create a nuisance or dangerous condition that could cause injury or damage to human health and the environment.

113. Defendants further had a duty to ensure that the manufacturing processes that they chose to employ did not unreasonably endanger the drinking water relied upon by residents

in the surrounding community, including those residing on the Property.

114. Defendants breached the above-stated duties by unreasonably disposing of PFAS and other toxins in a manner which made it foreseeable that they would enter the environment, specifically but not limited to the groundwater, exposing nearby residents, including Plaintiffs, who relied upon the groundwater for drinking and household water supply.

115. Defendant 3M had a duty to warn users of their PFAS and other relevant products of the dangers of releasing PFAS and other relevant toxins into the environment.

116. Defendant 3M breached the above-stated duty by failing to adequately warn and provide sufficient instructions to purchasers such as Defendants Solvay, Arkema, DuPont, Chemours, and John Doe Entities #1-20, to avoid discharging PFAS and other relevant toxins into the environment where it was likely to enter the environment including the soil, air, and water including groundwater and be inhaled, absorbed and/or ingested by residents including those residing at the Property and others in the surrounding communities.

117. Defendant 3M further breached a duty by neglecting to inform itself of the improper manner in which its purchasers, including the other Defendants mishandled highly toxic 3M products.

23

118. As a direct and proximate result of these acts and omissions, Defendants individually and collectively wrongfully caused the environment to be contaminated with PFAS and other toxins, thereby exposing Plaintiff to these chemicals and substances, and causing a direct injury to the injured Plaintiffs and derivative damages to Plaintiff's spouse as described above.

119. All Defendants contributed to the contamination of the environment with PFAS and other harmful substances, and all subsequently contributed to Plaintiffs' exposure to these chemicals, thereby causing injury to them.

120. The acts and omissions of all Defendants were negligent, and as a result, Plaintiffs have suffered and/or will in the future suffer damage in the form of bodily injury, emotional distress, economic loss, medical expenses and was otherwise damaged, for which Defendants are liable.

WHEREFORE, Plaintiff, Rene Mesogianes, requests that this Court enter judgment, jointly and severally, against Defendants for compensatory, punitive, and non-compensatory damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

## Count II: Gross Negligence and Recklessness

### Plaintiffs v. All Defendants and
### John Doe Entities #1-20

121. The allegations contained in all preceding paragraphs are incorporated herein as if fully restated.

122. At all relevant times, Defendants, as detailed above, committed acts and omissions with respect to PFAS and other toxins with actual malice and/or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions and/or with gross negligence.

123. Specifically, Defendants caused, permitted, and allowed the release of PFAS and other toxins into the environment including the air, water, and soil, including the drinking water serving the Property, constituting an entire want of care and a conscious indifference to the rights, welfare, safety, and health of Plaintiffs, such that Defendants' acts constitute gross negligence or reckless, willful or wanton misconduct.

124. Such conduct was motivated by greed in an effort to maximize profit with disregard to their duties and responsibilities to the public and to Plaintiffs.

125. All Defendants contributed to the contamination of the environment with PFAS and other toxins, and all subsequently contributed to the exposures and injuries alleged herein.

126. Defendants' conduct involved deliberate acts or omissions with knowledge of a high degree of probability of harm to the Plaintiffs and an attendant reckless indifference to Plaintiffs' health, safety, and welfare.

127. At all material times hereto, Defendants knew or should have known that their PFAS and other toxins would contaminate the environment including the air, soil, and groundwater and contaminate the drinking and household water of residents in surrounding communities, including Plaintiffs'.

128. At all material times hereto, Defendants knew or should have known that PFAS and other toxins were hazardous substances and the reckless, and/or wanton and willful discharge of those chemicals into the environment and surrounding communities would eventually reach the Property, soil, air, and drinking and household water wells thus exposing Plaintiffs to high and injurious concentrations of the hazardous chemicals.

129. At all material times hereto, Defendants knew or should have known of the health and environmental impacts of PFAS and other toxins for decades but continued to use them in products and release them into the environment.

130. At all material times hereto, Defendants knew that PFOA and PFOS and other toxins were harmful to people and the environment based on its own studies.

26

131. At all material times hereto, despite actual or constructive knowledge of its chemicals' toxicity to humans and the environment, Defendants proactively sought to conceal that information from the public.

132. At all material times hereto, despite actual or constructive knowledge of their chemicals' toxicity to humans and the environment, Defendants proactively misrepresented the chemicals' hazardous properties, including knowingly and purposefully withholding material information from regulators and governmental agencies.

133. At all material times hereto, even after Defendants acquired actual knowledge that it was causing groundwater, soil, air, and drinking water contamination and thus exposing nearby residents to its PFAS and other toxins, including Plaintiffs, Defendants continued their operations and continued discharging these toxins into the environment and exposing residents in surrounding communities, including Plaintiffs, in reckless and conscious disregard for the serious health and safety risks associated with such exposure.

134. At all material times hereto, Defendants committed acts and omissions with respect to PFAS and other toxins with actual malice and/or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

27

135. At all material times hereto, Defendants knowingly, continuously, and with conscious indifference to the rights of residents in surrounding communities, including Plaintiffs, to have access to clean air, soil, water, and drinking water, caused, allowed, or permitted the discharge of large quantities of PFAS and other toxins into the environment, air, soil, and groundwater, had no justification for doing so, and made no effective effort to alleviate the problem.

136. Such conduct was motivated by greed and taken in deliberate and knowing disregard of Defendants' duties to Plaintiffs and all similarly situated individuals.

137. Defendants' acts and omissions as set forth in the preceding paragraphs demonstrate their reckless and conscious disregard of the health, safety, and welfare, of residents in the community, including Plaintiffs.

138. As a direct and proximate result of Defendants' conscious and deliberate disregard for the health, safety, and welfare of residents in surrounding communities, including Plaintiffs, Plaintiff, Renee Mesogianes, suffered and continues to suffer severe and permanent personal injuries and other damages, both economic and noneconomic, as set forth above.

139. The aforesaid conduct of Defendants was committed with knowing, conscious, and deliberate disregard for the rights and safety of residents in surrounding communities, including

Plaintiffs, thereby warranting an award of punitive damages in an amount appropriate to punish Defendants and deter them from similar conduct in the future.

140. Defendants' actions showed willful misconduct, malice, fraud, wantonness, and/or oppression, and demonstrates conscious indifference to the consequences.

141. All Defendants' conduct demonstrated a willful and wanton, malicious and reckless disregard of the rights of Plaintiffs so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiff, Rene Mesogianes, requests that this Court enter judgment, jointly and severally, against Defendants for compensatory, punitive, and non-compensatory damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

## Count III:

### Private Nuisance, Plaintiffs v. Clemente, Solvay, Arkema, DuPont, Chemours and John Doe Entities #1-20

142. The allegations contained in all preceding paragraphs are incorporated herein as if fully restated.

143. Defendants acts and omissions with respect to the release of PFAS and other toxins in the environment resulted in the contamination of the air, soil, and water, including but not limited to Plaintiffs' water supply, and have thus unreasonably

interfered with Plaintiffs' use and enjoyment of their property, invading the home and body of Renee Mesogianes.

144. Defendants acts and omissions with respect to the release of PFAS and other toxins have made Plaintiffs' water supply unfit for consumption and other domestic purposes.

145. Defendants' unreasonable interference with the use and enjoyment of Plaintiffs' property constitutes a continuous invasion of Plaintiffs' rights.

146. Defendants, Clemente, Solvay, Arkema, DuPont and Chemours, all contributed to the contamination of the environment with PFAS and other toxins, and all substantially contributed to a private nuisance sustained by Plaintiffs.

WHEREFORE, Plaintiff, Rene Mesogianes, requests that this Court enter judgment, jointly and severally, against Defendants for compensatory, punitive, and non-compensatory damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

### Count IV: Public Nuisance

#### Plaintiffs v. Clemente, Solvay, Arkema, DuPont, Chemours and John Doe Entities #1-20

147. The allegations contained in all preceding paragraphs are incorporated herein as if fully restated.

148. Defendants' conduct detailed above unreasonably interfered with a right common to the general public, including

the public's right to be free from environmental contamination in the air it breathes and water it drinks, and in which its members bathe, shower, and swim.

149. Defendants' conduct detailed above unreasonably and significantly interfered with the public health and public safety by contaminating water, soil, and air with toxic and carcinogenic chemicals.

150. Defendants' conduct was of a continuing nature, and/or produced a long-lasting effect, and Defendants knew and/or had reason to know that it would have a significant effect on the public's rights.

151. Plaintiffs suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public.

152. Defendants' acts and omissions with respect to the release of PFAS and other toxins in the environment including the air, soil, and water resulted in the contamination of Plaintiffs' home and private water supply.

153. Defendants' unreasonable interference with the use and enjoyment of Plaintiffs' property constitutes a continuous invasion of their rights.

154. Defendants, Clemente, Solvay, Arkema, DuPont and Chemours all contributed to the contamination of the environment

31

with PFAS and other toxins, and all subsequently contributed to the public nuisance imposed on Plaintiffs.

155. Defendants' creation of a continuing public and/or private nuisance has damaged Plaintiffs in the form of bodily injury, emotional distress, and other damages all of a type not common to the general public, for which Defendants are liable to Plaintiffs.

WHEREFORE, Plaintiff, Rene Mesogianes, requests that this Court enter judgment, jointly and severally, against Defendants for compensatory, punitive, and non-compensatory damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

## Count V: Past and Continuing Trespass

### Plaintiffs v. Clemente, Solvay, Arkema, DuPont, Chemours and John Doe Entities #1-20

156. The allegations contained in all preceding paragraphs are incorporated herein as if fully restated.

157. As related above, Plaintiffs are the owner(s) and/or possessor(s) of real property and reside or resided on those properties.

158. Defendants negligently, recklessly, and/or intentionally failed to properly control, apply, use and/or dispose of PFAS and other toxins resulting in its discharge into the environment

entering, invading, intruding, and injuring the rights of Plaintiffs to possess and enjoy properties.

159. Plaintiffs have not consented and do not consent to the contamination alleged herein, and Defendants knew or reasonably should have known that Plaintiffs would not consent to such.

160. Defendants, Clemente, Solvay, Arkema, DuPont and Chemours, all contributed to the contamination of the environment with PFAS and other toxins, and all subsequently contributed to the past and continuing trespass imposed on Plaintiff.

161. As a direct and proximate result of Defendants' acts and omissions as alleged herein, the soil and drinking water wells on Plaintiffs' properties have been contaminated with PFAS, and other toxins, causing significant personal injuries and damage, including actual, consequential, and nominal damages as described above.

WHEREFORE, Plaintiff, Rene Mesogianes, requests that this Court enter judgment, jointly and severally, against Defendants, other than 3M, for compensatory, punitive, and non-compensatory damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

**Count VI: Strict Liability (Abnormally Dangerous Activities)**

**Plaintiffs v. Clemente, Solvay, Arkema, DuPont, Chemours, 3M and John Doe Entities #1-20**

162. The allegations contained in all preceding paragraphs are incorporated herein as if fully restated.

163. At all relevant times, Defendants, Clemente, Solvay, Arkema, DuPont, Chemours, 3M, and John Doe Entities #1-20 sold, disposed of, discharged, and emitted hazardous substances from their facilities, and Clemente discharged hazardous substances from facilities owned, controlled, and operated by them.

164. As a result of Defendant 3M selling and Defendants, Clemente, Solvay, Arkema, DuPont, Chemours and John Doe Entities #1-20 discharging such substances from their sites, the groundwater under Plaintiffs' Property was contaminated with hazardous substances, creating actual harm to Plaintiffs.

165. The manufacturing, utilization, disposal, and discharge of PFAS and other toxins constitute abnormally dangerous activities that introduce an unusual danger in the community.

166. Defendants' activities in selling, manufacturing, utilizing, disposing, and discharging these products presented a high degree of risk of harm to the person, land, and/or chattels of others.

167. It was likely that the harm resulting from Defendants' activities would be great.

34

168. The exercise of reasonable care does not eliminate the risk of harm posed by Defendants' activities.

169. Defendants' activities are not a matter of common usage in the areas in which they were carried out.

170. Defendants' activities were inappropriate to the locations in which they were carried out.

171. The dangerous attributes of and risk posed by Defendants' activities outweighed their value to the community.

172. The manufacturing, utilization, disposal, and discharge of these products are not matters of common usage in the areas where these activities were carried out.

173. At all relevant times, the risk of the Defendants' abnormally dangerous activities outweighed the value to the community.

174. Defendants' acts and omissions in selling, manufacturing, utilizing, disposing, and discharging hazardous chemicals proximately caused the contamination to Plaintiffs' Property and injuries to Plaintiffs, making them strictly liable for the harm caused by such contamination.

175. Defendants, Clemente Solvay, Arkema, DuPont, 3M and Chemours all foreseeably contributed to the contamination of the environment with PFAS and other toxins, and all subsequently contributed to Plaintiffs' exposure to these chemicals, thereby causing injury to them.

35

176. As a direct and proximate result of Defendants' discharges of hazardous substances and contaminants, Plaintiffs have and will continue to suffer damages.

WHEREFORE, Plaintiff, Rene Mesogianes, requests that this Court enter judgment, jointly and severally, against Defendants for compensatory, punitive, and non-compensatory damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

### Count VII: Strict Liability (Failure to Warn)
### Plaintiffs v. 3M and John Doe Entities #1-20

177. The allegations contained in all preceding paragraphs are incorporated herein as if fully restated.

178. Defendant 3M developed, tested, assembled, manufactured, packaged, labeled, prepared, distributed, marketed, and/or supplied PFAS and other toxins for sale and sold such products to Defendants DuPont, Chemours, Solvay, Arkema, and John Doe Entities #1-20 in the ordinary course of their businesses.

179. Upon information and belief, Defendants DuPont, Chemours, Solvay, Arkema, and John Doe Entities #1-20 utilized the PFAS chemicals and other toxins supplied by Defendant 3M in a reasonably foreseeable and intended manner.

180. The PFAS and other toxins sold by Defendant 3M were unreasonably dangerous to residents of surrounding communities, including Plaintiffs, without adequate warnings and instructions

36

to prevent discharge of PFAS and other toxins into the environment
and accumulation inside the bodies of residents in surrounding
communities, including Plaintiffs.

181. Defendant 3M knew or should have known that the PFAS and
other toxins they sold would be discharged into the environment
and cause contamination of the water supply of residents and
accumulation in the blood serum and bodily tissues of residents
living in the surrounding communities, including Plaintiffs.

182. Defendant 3M failed to advise Plaintiffs as well as
Defendants Solvay, Arkema, DuPont, Chemours, and John Doe Entities
#1-20 which were purchasers, users or those foreseeably exposed,
to their PFAS and other toxins about the risks these products
posed to foreseeable third parties, such as Plaintiffs, and about
techniques that could be employed to reduce or eliminate these
risks.

183. Defendant 3M had actual knowledge of the health hazards
associated with PFAS and other toxins through both animal studies
conducted by researchers employed or contracted by such Defendants
and though experience with Defendant's own workers, but, upon
information and belief, failed to share such information with
purchasers, users or those foreseeably exposed to their products,
including Plaintiffs, Defendants, DuPont, Chemours, Solvay,
Arkema, and John Doe Entities #1-20, Clemente, or with
governmental agencies.

37

184. Defendant 3M acted with reckless indifference to the health and safety of residents in surrounding communities where its PFAS and other toxins were used by failing to provide adequate warnings of the known dangers of such products when discharged into the environment and ingested by nearby residents, such as Plaintiffs.

185. Defendant 3M had a duty to warn users of their PFAS products and other toxins of the dangers of releasing PFAS and other toxins into the environment.

186. Defendant 3M breached the above-stated non-delegable duty by failing to adequately warn and provide sufficient instructions to purchasers such as Defendants, Solvay, Arkema, DuPont, Chemours, and John Doe Entities #1-20, to avoid discharging PFAS and other toxins into the environment where it was likely to enter groundwater and be ingested by residents in surrounding communities, including Plaintiffs.

187. As a direct and proximate result of Defendant 3M's acts and omissions, Plaintiffs have and will continue to suffer damages.

WHEREFORE, Plaintiff, Rene Mesogianes requests that this Court enter judgment, jointly and severally, against Defendant, 3M, for compensatory, punitive, and non-compensatory damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

38

## Count VIII: Strict Liability (Defective Design)

### Plaintiffs v. 3M and John Doe Entities #1-20

188. The allegations contained in all preceding paragraphs are incorporated herein as if fully restated.

189. Defendant 3M designed, manufactured, and sold PFAS and other toxins that were used at the Chambers Works and West Deptford facilities, and elsewhere by Defendants including DuPont, Chemours, Solvay, Arkema and John Doe Entities #1-20 and disposed of by Clemente.

190. As a manufacturer and seller of PFAS and other toxins, Defendant 3M had a duty to make and sell products that are reasonably fit, suitable, and safe for their intended or reasonably foreseeable uses.

191. Defendant 3M owed that duty to direct users of its products, to reasonably foreseeable users of its products, and also to any person who might reasonably be expected to come into contact with these products, such as Plaintiffs.

192. Defendant 3M's PFAS products and other toxins were used in a reasonably foreseeable manner and without substantial change in the condition of such products and were defective and unfit for their reasonable use.

193. Defendant 3M knew or should have known that use of its PFAS and other toxins used by Defendants DuPont, Chemours, Solvay, Arkema, and John Doe Entities #1-20 would result in the spillage,

discharge, and/or release of PFAS and other toxins into the environment and would contaminate the environment including the groundwater, air, soil, and drinking water of surrounding communities, including Plaintiffs'.

194. Defendant 3M knew or should have known that its PFAS and other toxins would eventually come into contact with and harm residents in surrounding communities, including Plaintiffs.

195. Defendant 3M's PFAS products were defective in design and unreasonably dangerous because, among other things:

    a.    PFAS and other toxins cause extensive and persistent contamination when used in a reasonably foreseeable and intended manner; and

    b.    PFAS and other toxins' contaminate the environment, including the air, soil, and groundwater, which are the sources of drinking water to citizens in the surrounding communities, including Plaintiffs, poses significant threats to their health, safety, and welfare.

196. At all relevant times, Defendant 3M's PFAS and other toxins which they designed, manufactured, and sold were dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

197. The foreseeable risk to public health and welfare, including that of Plaintiffs', posed by Defendant 3M's PFAS and

other toxins outweighed the cost to Defendant, 3M, of reducing or eliminating such risk.

198. Defendant 3M knew or should have known about reasonably safer and feasible alternatives to PFAS and other toxins.

199. As a direct and proximate result of Defendant 3M's acts and omissions, Plaintiffs have and will continue to suffer damages.

WHEREFORE, Plaintiff, Rene Mesogianes, requests that this Court enter judgment, jointly and severally, against Defendant, 3M, for compensatory, punitive, and non-compensatory damages, together with interest, costs, attorneys' fees and all such other relief as the Court deems proper.

### Count IX: Loss of Consortium and Services

200. The allegations contained in all preceding paragraphs are incorporated herein as if fully restated.

201. Renee Mesogianes and William Mesogianes are wife and husband and have been married at all times pertinent to this litigation.

202. As a result of the misconduct of the Defendants described herein and the harm suffered by Renee, Plaintiff, William Mesogianes, has suffered a loss of guidance, society, support, companionship, consortium, and other services.

WHEREFORE, Plaintiff, William Mesogianes, requests that this Court enter judgment jointly and severally against Defendants for

compensatory, punitive damages, and non-compensatory damages together with interest, costs, attorneys' fees, and all other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

SZAFERMAN, LAKIND,
BLUMSTEIN & BLADER, P.C.

By: /s/ Arnold C. Lakind
Arnold C. Lakind, Esq.

Dated: December 13, 2021

## DESIGNATION OF TRIAL COUNSEL

Steven J. Phillips is hereby designated as trial counsel.

42

## CERTIFICATION

Arnold C. Lakind, of full age, hereby certifies that pursuant to Rule 4:5-1:

1.    The matter in controversy is not the subject of any other action pending in any court or of any pending arbitration proceeding and no other action or arbitration proceeding is contemplated.  Counsel has however filed similar Complaints in this Court against these Defendants for a different Plaintiff:

> Philipp v. Clemente, Inc.; Anthony Clemente, Inc.; and John Does 1 to 10, Docket NO. SLM-L-181-21.
>
> Allbritton v. Clemente, Inc.; Anthony Clemente, Inc.; and John Does 1 to 10, Docket NO. SLM-L-187-21.
>
> Allen v. Clemente, Inc.; Anthony Clemente, Inc.;  and John Does 1 to 10, Docket NO. SLM-L-198-21.

2.    There are no other parties known to Plaintiff at this time who should be joined in this action to the undersigned's best knowledge.

3.    I certify, pursuant to N.J. Court Rule 1:38-7(c) that confidential personal identifiers have been redacted from any documents now submitted to the court, and will be redacted from all documents submitted in the  future in accordance with Rule 1:38-7(b).

By: /s/ Arnold C. Lakind
Arnold C. Lakind, Esq.

Dated: December 13, 2021

43

# EXHIBIT B

**SUPERIOR COURT OF NEW JERSEY - eCOURTS**

The following was filed by LAKIND, ARNOLD, C on 11/15/2021 at 9:32 AM:

| | |
|---|---|
| Plaintiff Name: | WILLIAM MESOGIANES, RENEE MESOGIANES |
| Defendant Name: | A. CLEMENTE, INC., ANTHONY CLEMENTE, INC. |
| Case Caption: | MESOGIANES RENEE VS A. CLEMENTE, INC. |
| Case Number: | SLM-L-000199-21 |
| Docket Text: | AFFIDAVIT OF SERVICE submitted by LAKIND, ARNOLD, C of SZAFERMAN LAKIND BLUMSTEIN & BLADER PC on behalf of WILLIAM MESOGIANES, RENEE MESOGIANES against A. CLEMENTE, INC. |
| Transaction ID: | LCV20212663474 |

**Notice has been electronically sent to:**

| | | |
|---|---|---|
| Plaintiff Attorney | ARNOLD C LAKIND | ALAKIND@SZAFERMAN.COM |
| | | SKLIWINSKI@SZAFERMAN.COM |
| | | CMYLES@SZAFERMAN.COM |
| Plaintiff Attorney | ARNOLD C LAKIND | ALAKIND@SZAFERMAN.COM |
| | | SKLIWINSKI@SZAFERMAN.COM |
| | | CMYLES@SZAFERMAN.COM |

**Notice was not electronically mailed to:**

| | |
|---|---|
| Defendant | A. CLEMENTE, INC. |
| Defendant | ANTHONY CLEMENTE, INC. |

Login to eCourts to view the case jacket. You will need a valid user ID(Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey - Civil Part.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

```
SZAFERMAN, LAKIND,
  BLUMSTEIN & BLADER P.C.
101 GROVERS MILL ROAD, SUITE 104
LAWRENCEVILLE, NEW JERSEY 08648
By: Arnold C. Lakind, Esq.
  Attorney ID# 002581973
Telephone: (609) 275-0400
Fax: (609) 275-4511
Attorneys for Plaintiffs
```

| | |
|---|---|
| RENEE MESOGIANES and WILLIAM MESOGIANES, h/w<br><br>Plaintiffs,<br><br>v.<br><br>A. CLEMENTE, INC.;<br>ANTHONY CLEMENTE, INC.; and John Does 1 to 10<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>SALEM COUNTY<br>DOCKET NO. SLM-L-_____-21<br><br><u>CIVIL ACTION</u><br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs, Renee Mesogianes and William Mesogianes, by way of Complaint against A. Clemente, Inc. and Anthony Clemente, Inc. (collectively "Defendants") say that:

**A.   The Nature of the Action**

1.   This is a civil action brought by Renee Mesogianes ("Renee")and William Mesogianes ("William" and collectively "Plaintiffs"), which seeks to recover damages for personal injuries suffered by Plaintiffs.

2.   Renee suffers from profound and permanent personal injuries including:

5580410.1

a.   Lung cancer;

b.   Barrett's Esophagus;

c.   Diverticulosis;

d.   Thyroid hashimoto;

e.   Profound pain and suffering and mental anguish;
and

f.   Loss of the ability to enjoy life's pleasures.

3.   Those injuries were foreseeably caused by Defendants'
misconduct, including their intentional discharge and/or
disposal of toxic and dangerous chemicals and substances.

4.   These chemicals and substances include but are not
limited to:

a.   poly- and perfluoroalkyl substances ("PFAS"),
(among them perfluorononanoic acid ("PFNA"), perfluorooctanoic
acid ("PFOA"), and perfluorooctanesulfonic acid ("PFOS"), as
well as their replacement compounds, including but not limited
to "GenX").

b.   halogenated hydrocarbons (*e.g.,* dichloromethane,
or methylene chloride, trichloroethylene, perchlorethylene);

c.   heavy metals (*e.g.,* lead, mercury, arsenic,
copper, antimony);

d.   freons;

2

      e.   industrial alcohols and solvents (*e.g.,* acetone, toluene, acetonitrile, ethyl acetate, heptane, hexane, isopropynol, benzene, ethylbenzene, xylene);

      f.   numerous mixtures and wastes consisting of multiple compounds, substances and/or products (*e.g.,* paints, dyes, fuels, explosives, ammunition, hereafter collectively "mixtures" or "waste");

      g.   polycyclic aromated hydrocarbons ("PAHs"); and

      h.   particulate matter and airborne waste.

5.   These substances and other toxins, (hereafter "toxins") individually and in mixtures have the capacity to cause:

      a.   adverse reproductive outcomes;

      b.   Autism/Asperger's syndrome, eczema, orthopedic injuries including scoliosis, gastrointestinal illness; asthma and allergies;

      c.   birth defects, developmental delays, genetic damage, and embryonic tumors;

      d.   cancers and additional severe non-malignant disorders.

6.   Further, these toxins have the capacity to act in an additive or synergistic fashion such that mixed exposures

3

enhance or even multiply their capacity to inflict and accelerate the harm(s) of the type described above.

7.   In addition, the mechanisms by which these relevant toxins inflict harm are many, and include:

a.   apoptosis (cell death),

b.   oxidative stress,

c.   genotoxicity (spontaneous or *de novo* mutation),

d.   epigenetic change,

e.   diminished cellular nourishment,

f.   impaired cell to cell communication,

g.   endocrine disruption,

h.   impaired or excessive immune responses,

i.   intrauterine growth retardation,

j.   impaired organogenesis, and

k.   the capacity to cross placental and brain barriers.

8.   There are no safe levels of exposures to these toxins, especially with mixed and prolonged exposures.

9.   While exposures to these toxins (*e.g.,* quantum of exposure, duration(s) of exposure and timing of exposure relative to the adverse outcome) typically operate along a biological gradient (dose-response), such that increases in

quantum, duration or timing increase the potential for harm, even a single exposure at vanishingly small quanta, unfortunately timed, has the capacity to cause the above described and other injuries. Accordingly, although the calculation of the precise dose of exposure to each toxin or mixture (and to the aggregate of all exposures) is not presently known, these exposures, from both a qualitative and quantitative perspective, are more than sufficient to have caused Renee's injuries.

10. As a consequence of Defendants' intentional, knowing, reckless, grossly negligent, and negligent acts and omissions described herein, resulting in the contamination of the environment, water, air, and soil, including but not limited to Plaintiffs' water supply, Plaintiffs seeks to recover compensatory and punitive damages for the personal injuries suffered by Plaintiffs.

11. The external routes of exposure which caused Renee's injuries for which Defendants are responsible, involved airborne dispersion, groundwater, surface water, contamination of domestic water supplies, soil contamination, and vapor intrusion in and around Renee's residence and adjacent neighborhoods.

12.  Exposures of significance with respect to the etiology of injuries described above occurred during the period when Renee lived at the addresses set forth in Paragraph 14.

**B.   The Parties**

13.  Plaintiffs are adult citizens of the State of New Jersey.

14.  Since in or about 1992, Plaintiffs have resided at and been domiciled at 16 Henry Avenue, Pennsville, NJ 08070. From approximately 1971 to 1991, Renee resided at and was domiciled at a home located at 162 Boston Road, Pennsville, NJ 08070.

15.  Defendant, Anthony Clemente, Inc. (a/k/a "A. Clemente, Inc.," hereafter referred to as "Clemente") is a corporation organized under the laws of the State of New Jersey and is the owner of block 247, lots 1 and 2 also known as 211 South Pennsville Auburn Road, in the Township of Carneys Point, County of Salem, State of New Jersey (the "Clemente Property").

16.  The Clemente Property has been used for the disposal of hazardous waste generated by E.I. Du Pont de Nemours & Company and others, which hazardous waste has migrated on to Plaintiffs' properties causing Renee to be exposed to a variety of harmful substances including profound personal injuries described above sustained by Renee.

6

17.   John Does 1 to 10 are various persons and entities, including successors, subsidiaries and other persons or entities affiliated with Clemente, Inc. and/or having an interest in the Clemente Property.

**C.    Statement of Facts**

18.    Renee suffers from profound personal injuries described in Paragraph 2 above.

19.   These injuries were all proximately caused by the Defendants' misconduct, including their intentional and negligent discharge, storage, and/or acceptance for disposal of toxic and hazardous chemicals including, but not limited to the toxins described in paragraph 4 above.

20.   PFAS are man-made chemicals that have been manufactured and used in the United States since the 1940's.

21.   PFAS compounds are a substantial threat to the environment and human health.

22.   Some PFAS have been classified as carcinogenic.

23.   Studies report that PFAS exposure and exposures to the other toxins listed in Paragraph 4 have the capacity to cause *inter* alia:  cancers, birth defects, neurological impairments, Autism/Asperger's syndrome, eczema, orthopedic injuries including scoliosis, gastrointestinal illness, asthma and

7

allergies, endocrine disorders, reduced vaccine response, neurological damage, central nervous system damage, cognitive impairment, increased cholesterol, and increased liver enzymes and a host of other disorders including those suffered by Renee.

24.  PFAS compounds and certain other toxins are resistant to degradation.

25.  PFAS compounds and certain other toxins persist indefinitely in the environment.

26.  PFAS compounds and certain other toxins or their metabolites bio accumulate in living tissue.

27.  People who consume PFAS and other toxins via drinking water and are otherwise exposed accumulate increasing concentrations of PFAS and other toxins or their metabolites in their blood.

28.  For decades, Defendants and their predecessors in interest have known (or should have known) of the highly toxic characteristics of PFAS and other toxins.

29.  The New Jersey Department of Environmental Protection ("NJDEP") is engaged in an ongoing investigation of the presence of PFAS and other toxins in New Jersey's environment.

8

30.   In 2009, EPA issued preliminary health advisory values for PFOA and PFOS in drinking water of 400 parts per trillion ("ppt") and 200 ppt, respectively.

31.   In 2016, EPA lowered its advisories for PFOA and PFOS to 70 ppt collectively in further recognition of their extreme danger at even the most miniscule doses.

32.   In 2018 the United States Department of Health and Human Services, Agency for Toxic Substances and Disease Registry ("ATSDR") released draft minimum risk levels of 21 ppt for PFOA and PFNA, and 14 ppt for PFOS.

33.   On March 13, 2019, the NJDEP established interim specific groundwater quality criteria for PFOA and PFOS of 10 ppt.

34.   NJDEP has adopted a specific groundwater Quality Standard ("GWQS") of 10 ppt for PFNA and a Maximum Contaminant Level ("MCL") for PFNA of 13 ppt.

35.   NJDEP added PFNA to its List of Hazardous Substances on January 16, 2018.

36.   NJDEP has adopted maximum contaminant levels for PFOA of 14 ppt and PFOS of 13 ppt in recognition of the hazardous and persistent nature of these chemicals.

37. The other toxins listed above have also been the subject of repeated evaluation and regulation by agencies of the federal government, the State of New Jersey, other state governments, and foreign regulatory bodies. Defendants are believed to have violated such regulations at relevant times which violations have adversely impacted the Plaintiffs.

38. For over a century, from 1891 to 2015, E.I. DuPont de Nemours & Company and successors ("DuPont") owned and operated Chambers Works, 67 Canal Road and Route 130, located in Pennsville and Carneys Point Townships, New Jersey ("Chambers Works").

39. DuPont produced, used, and discharged into the environment approximately 1,200 separate chemicals, pollutants, and other hazardous substances from the Chambers Works facility.

40. Upon information and belief, in addition to the PFOA/PFAS chemicals, many, if not most of the other toxins discussed above were also wrongfully produced, used and discharged into the environment from this facility.

41. PFOA was used at Chambers Works beginning in the late 1950's to, among other things, manufacture fluoroelastomers, perfluoroelastomers, and specialty fluoroelastomers used in a variety of consumer and other products for their chemical non-stick and heat-resistant properties.

10

42.   Telomers were used and manufactured at Chambers Works.

43.   PFOA is a by-product of the telomer manufacturing process.

44.   DuPont also accepted large quantities of PFOA-containing waste from off-site facilities.

45.   For decades, DuPont and others deposited massive amounts of PFOA as well as other PFAS, including PFNA, and other toxins from Chambers Works on to the Clemente Property.

46.   In 2015, DuPont transferred its Chambers Works facility to Chemours.

47.   DuPont and/or Chemours shipped PFOAs and other chemicals to Clemente for disposal on the Clemente Property.

48.   Defendants committed acts and omissions with respect to PFAS and other toxins with actual malice and/or with a wanton and willful disregard of people who foreseeably might be harmed by those acts or omissions.

49.   This conduct was performed with greed and in callous disregard of the public health as well as Renee's health and well-being, in order to maximize profit, avoid necessary expense, and to reduce or eliminate their obligations to otherwise remediate or prevent the discharge of PFAS into the environment impacting the Plaintiffs.

50. At various times prior to and during the period of time when Renee was exposed to toxic substances that caused Renee's illness, Clemente owned the Clemente Property.

51. One portion of the Clemente Property contained a large pond (the "Clemente Pond").

52. Clemente allowed DuPont and others to deposit hazardous waste into the Clemente Pond and elsewhere on the Clemente Property.

53. The Clemente Pond was in contact with groundwater that underlay other properties in the community, including Plaintiffs'.

54. Hazardous waste deposited onto the Clemente Property and into the Clemente Pond leached into the groundwater and contaminated the environment.

55. As a consequence of the deposit of hazardous waste on the Clemente Property, the groundwater which underlay the Clemente Property became contaminated, but Clemente took no or insufficient steps to clean up the contamination, prevent its migration offsite or to warn those who might be exposed to the contamination including Renee.

56.   The groundwater which became contaminated was used to supply potable water to Renee's homes, and hazardous chemicals in the groundwater originating at the Clemente Property volatilized into Renee's homes.

57.   The air which became contaminated flowed over and into Renee's home and was inhaled by Renee.

58.   Contaminants originating on the Clemente Property vaporized and entered Renee's home and was inhaled by Renee.

59.   As a consequence of Defendants' misconduct, the groundwater, air, water and soil outside of the Clemente Property, including Renee's homes, became contaminated and Renee was exposed to hazardous substances which caused Renee's illnesses.

60.   Defendants' conduct was performed with greed and in callous disregard of the public health as well as Renee's health and well-being, in order to maximize profit, avoid necessary expense, and in disregard of the law.

61.   For decades, Defendants knew or should have known of the severe and adverse health and environmental effects and impacts of PFAS and other toxins.

62.   Despite that knowledge, Defendants continued to store PFAS and other toxins and to allow them to be discharged into the environment but took insufficient steps to clean up the

contamination, prevent its migration offsite or to warn those who might be exposed to the contamination including Renee.

63.   Studies show that exposure to PFAS have the capacity to cause *inter alia* a variety of illnesses described above.

64.   The routes of exposure to Renee include among others: a) the ingestion of drinking water, b) the inhalation of vapors and particulate matter, and c) dermal contact and skin absorption.

65.   Defendants' misconduct and the resulting wrongful exposures, proximately caused Renee's injuries and damages as described above.

66.   As a consequence, each Defendant is individually and jointly and severally liable to Plaintiffs for both compensatory and punitive damages.

## COUNT I Negligence

67.   Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein.

68.   Defendants knew or should have known that the storage of PFAS and/or the disposal and/or the discharge of PFAS and other toxins into the air, soil, groundwater, and drinking or household water are hazardous to human health and the environment.

14

69. Defendants further knew or should have known that it was unsafe and/or unreasonably dangerous to store and/or discharge PFAS and other toxins into the environment in close proximity to surrounding residential communities, including Renee's residence(s) and to fail to clean up the contamination, prevent its migration offsite or to warn those who might be exposed to the contamination including Renee.

70. Defendants had a duty to take all reasonable measures to ensure that PFAS and other toxins would be effectively contained and not discharged into the surrounding environment.

71. Defendants had a duty to operate and manage their facilities and the wastes they stored, discharged and/or disposed of in such a way as to not create a nuisance or dangerous condition that could cause injury or damage to human health and the environment.

72. Defendants breached the above-stated duties by unreasonably storing PFAS and other toxins in a manner which made it foreseeable that they would enter the environment, specifically, but not limited to the groundwater, exposing nearby residents, including Renee, who relied upon the groundwater for their drinking and household water supply.

73. As a direct and proximate result of these acts and omissions, Defendants wrongfully caused the environment to be

contaminated with PFAS and other toxins, thereby exposing Renee to these chemicals and substances and causing injury to Renee as described above.

74.   Defendants contributed to the contamination of the environment with PFAS and other harmful substances, and also subsequently contributed to Renee's exposure to these chemicals, thereby causing injury to them.

75.   The acts and omissions of Defendants were negligent and, as a proximate result, Renee has suffered and/or will in the future suffer damage in the form of bodily injuries, emotional distress, economic loss, medical expenses, and was otherwise damaged, for which Defendants are liable.

WHEREFORE, Plaintiffs request that this Court enter judgment jointly and severally against Defendants for compensatory, non-compensatory and punitive damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

### COUNT II: Gross Negligence and Recklessness

76.   Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein.

77.   At all relevant times, Defendants, as detailed above, committed acts and omissions with respect to PFAS and other toxins with actual malice and/or with a wanton and willful

disregard of persons who foreseeably might be harmed by those acts or omissions and/or with gross negligence.

78.  Specifically, Defendants caused, permitted, and allowed the release of PFAS and other toxins into the environment including the air, water, and soil, including the drinking water of Renee as well as the air which Renee breathed and the atmosphere with which Renee was in contact, constituting a want of care and a conscious indifference to the rights, welfare, safety, and health of Renee, such that Defendants' acts constitute gross negligence or reckless, willful or wanton misconduct.

79.  Such conduct was motivated by greed in an effort to maximize profit with disregard to Defendants' duties and responsibilities to the public and to Plaintiffs.

80.  Defendants contributed to the contamination of the environment with PFAS and other toxins, and also subsequently contributed to Renee's exposure to these chemicals, thereby proximately causing personal injury to Renee and a loss of services and other derivative injuries to William.

81.  Defendants' conduct involved deliberate acts or omissions with knowledge of a high degree of probability of harm to the Renee and an attendant reckless indifference to Renee's health, safety, and welfare.

17

82.   Defendants' conduct demonstrated a willful and wanton, malicious and reckless disregard of the rights of Plaintiffs so as to warrant the imposition of compensatory, non-compensatory and punitive damages.

WHEREFORE, Plaintiffs request that this Court enter judgment jointly and severally against Defendants for compensatory, non-compensatory and punitive damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

### COUNT III: Loss of Consortium and Services

83.   Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein.

84.   Renee and William are wife and husband and have been married at all times pertinent to this litigation.

85.   As a result of the misconduct of the Defendants described herein and the harm suffered by Renee, Plaintiff, William, has suffered a loss of guidance, society, support, companionship, consortium, and other services.

WHEREFORE, Plaintiffs request that this Court enter judgment jointly and severally against Defendants for compensatory, non-compensatory and punitive damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

                              **SZAFERMAN, LAKIND,**
                                **BLUMSTEIN & BLADER, P.C.**


                         By: s/Arnold C. Lakind
                                Arnold C. Lakind, Esq.
Dated: October 19, 2021

**DESIGNATION OF TRIAL COUNSEL**

Steven J. Phillips is hereby designated as trial counsel.

**CERTIFICATION**

Arnold C. Lakind, of full age, hereby certifies that pursuant to Rule 4:5-1:

1.    The matter in controversy is not the subject of any other action pending in any court or of any pending arbitration proceeding and no other action or arbitration proceeding is contemplated.  Counsel has however filed similar Complaints in this Court against these Defendants for a different Plaintiff:

> Philipp v. Clemente, Inc.; Anthony Clemente, Inc.; and John Does 1 to 10, Docket NO. SLM-L-181-21.

> Allbritton v. Clemente, Inc.; Anthony Clemente, Inc.; and John Does 1 to 10, Docket NO. SLM-L-187-21.

> Allen v. Clemente, Inc.; Anthony Clemente, Inc.; and John Does 1 to 10, Docket NO. SLM-L-198-21.

19

2.    Other parties are known to Plaintiffs who should be joined in this action are, to the undersigned's best knowledge: Solvay Specialty Polymers USA LLC, Solvay Solexis, Inc., Arkema, Inc., E.I. DuPont de Nemours & Company, the Chemours Company FC, LLC, and The 3M Company.

3.    I certify, pursuant to N.J. Court Rule 1:38-7(c) that confidential personal identifiers have been redacted from any documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

s/Arnold C. Lakind<br>Arnold C. Lakind, Esq.

Dated: October 19, 2021

20

# Civil Case Information Statement

## Case Details: SALEM | Civil Part Docket# L-000199-21

**Case Caption:** MESOGIANES RENEE  VS A. CLEMENTE, INC.

**Case Initiation Date:** 10/20/2021

**Attorney Name:** ARNOLD C LAKIND

**Firm Name:** SZAFERMAN LAKIND BLUMSTEIN & BLADER PC

**Address:** 101 GROVERS MILL RD STE 200

LAWRENCEVILLE NJ 08648

**Phone:** 6092750400

**Name of Party:** PLAINTIFF : Mesogianes, Renee

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** TOXIC TORT

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** YES

**If yes, list docket numbers:** SLM-L-181-21, SLM-L-187-21, SLM-L-198-21

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** YES

**Are sexual abuse claims alleged by: Renee Mesogianes?** NO

**Are sexual abuse claims alleged by: William Mesogianes? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

<u>10/20/2021</u>

Dated

<u>/s/ ARNOLD C LAKIND</u>

Signed

# EXHIBIT C

```
Status Report For:      A. CLEMENTE, INC.
Report Date:            1/21/2022
Confirmation Number:    220212542990
```

## IDENTIFICATION NUMBER, ENTITY TYPE AND STATUS INFORMATION

```
Business ID Number:     1068601000
Business Type:          DOMESTIC PROFIT CORPORATION
Status:                 REVOKED FOR NOT FILING ANNUAL REPORT FOR 2
                        CONSECUTIVE YEARS
Original Filing Date:   05/15/1942
Stock Amount:           99999999999
Home Jurisdiction:      NJ
Status Change Date:     NOT APPLICABLE
```

## REVOCATION/SUSPENSION INFORMATION

```
DOR Suspension Start    07-28-2004
Date:
DOR Suspension End      N/A
Date:
Tax Suspension Start    N/A
Date:
Tax Suspension End      N/A
Date:
```

## ANNUAL REPORT INFORMATION

```
Annual Report Month:    MAY
Last Annual Report      08/05/1996
Filed:
Year:                   1996
```

## AGENT/SERVICE OF PROCESS (SOP) INFORMATION

```
Agent:                  DATHAN BOOTH
Agent/SOP Address:      SHELL RD. P.O. BOX 471,CARNEYS POINT,NJ,08069
                        0000
Address Status:         DELIVERABLE
Main Business Address:  433 SHELL RD, PENNS GROVE, NJ, 08069
Principal Business      433 SHELL RD,PENNS GROVE,NJ,08069
Address:
```

## ASSOCIATED NAMES

```
Associated Name:        N/A
Type:                   N/A
```

## PRINCIPALS

Following are the most recently reported officers/directors (corporations), managers/members/managing members (LLCs), general partners (LPs), trustees/officers (non-profits).

| | |
|---|---|
| Title: | TREASURER |
| Name: | BOOTH,BEVERLY |
| Address: | 3 DUNALP AVE, PENNSVILLE, NJ, 08070 |
| Title: | PRESIDENT |
| Name: | BOOTH,DATHAN |
| Address: | OLD KINGS HWY, SALEM, NJ, 08079 |

## FILING HISTORY -- CORPORATIONS, LIMITED LIABILITY COMPANIES, LIMITED PARTNERSHIPS AND LIMITED LIABILITY PARTNERSHIPS

To order copies of any of the filings below, return to the service page, https://www.njportal.com/DOR/businessrecords/Default.aspx and follow the instructions for obtaining copies. Please note that trade names are filed initially with the County Clerk(s) and are not available through this service. Contact the Division for instructions on how to order Trade Mark documents.

Charter Documents for Corporations, LLCs, LPs and LLPs

| | |
|---|---|
| Original Filing (Certificate)Date: | 1942 |

Changes and Amendments to the Original Certificate:

| Filing Type | Year Filed |
|---|---|
| CHANGE OF AGENT AND OFFICE | 1983 |
| REVOKED FOR FAILURE TO PAY ANNUAL REPORTS | 2004 |

Note:
Copies of some of the charter documents above, particularly those filed before June 1988 and recently filed documents (filed less than 20 work days from the current date), may not be available for online download.

- For older filings, contact the Division for instructions on how to order.
- For recent filings, allow 20 work days from the estimated filing date, revisit the service center at https://www.njportal.com/DOR/businessrecords/Default.aspx periodically, search for the business again and build a current list of its filings. Repeat this procedure until the document shows on the list of documents available for download.

The Division cannot provide information on filing requests that are in process. Only officially filed documents are available for download.

# EXHIBIT D

## U.S. Bankruptcy Court
### District of New Jersey (Camden)
### Bankruptcy Petition #: 98-19181-GMB

*Date filed:* 10/06/1998
*Date terminated:* 05/25/1999

*Assigned to:* Judge Gloria M. Burns
Chapter 7
Voluntary

| | |
|---|---|
| ***Debtor*** | represented by **Dean C. Waldt** |
| **A. Clemente, Inc.** | Ballard Spahr LLP |
| 433 Shell Road | 210 Lake Drive East |
| Carneys Point, NJ 08069 | Suite 200 |
| SALEM-NJ | Cherry Hill, NJ 08002-1163 |
| Tax ID / EIN: 21-0426977 | 856-761-3450 |
| *aka* **Clemente Leasing Corp.** | Fax : 856-761-1020 |
| | Email: waldtd@ballardspahr.com |

***Trustee***
**James O'Neill, III**
Stradley, Ronan, Stevens & Young
2600 One Commerce Square
Philadelphia, PA 19103
(215) 564-8103

# Proceedings for case 98-19181-GMB are not available

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/21/2022 14:33:39 | | |
| **PACER Login:** | mengl0012 | **Client Code:** | 099999-10932-0216 |
| **Description:** | Docket Report | **Search Criteria:** | 98-19181-GMB Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# EXHIBIT E

**STATE OF NEW JERSEY**
**DEPARTMENT OF THE TREASURY**
**DIVISION OF REVENUE AND ENTERPRISE SERVICES**
**SHORT FORM STANDING**

**A. CLEMENTE, INC.**
*1068601000*

*I, the Treasurer of the State of New Jersey, do hereby certify that the above-named New Jersey Domestic For-Profit Corporation was registered by this office on May 15, 1942.*

*Said business was Revoked for Failure to Pay Annual Reports on July 28, 2004, and as of the date of this certificate, has not been reinstated.*

*I further certify that the last registered agent and registered office of record were:*

DATHAN BOOTH
SHELL RD.
P.O. BOX 471
CARNEYS POINT, NJ 08069-0000



*IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal at Trenton, this 21st day of January, 2022*

**Elizabeth Maher Muoio**
*State Treasurer*

Certificate Number : 6127635987

Verify this certificate online at

*https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| | |

| **(b)**   County of Residence of First Listed Plaintiff _____ | County of Residence of First Listed Defendant _____ |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)**   Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| | |

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
       Plaintiff

☐ 2   U.S. Government
       Defendant

☐ 3   Federal Question
       *(U.S. Government Not a Party)*

☐ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☐ 1   Original
       Proceeding

☐ 2   Removed from
       State Court

☐ 3   Remanded from
       Appellate Court

☐ 4   Reinstated or
       Reopened

☐ 5   Transferred from
       Another District
       *(specify)*

☐ 6   Multidistrict
       Litigation -
       Transfer

☐ 8   Multidistrict
       Litigation -
       Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
_____

Brief description of cause:
_____

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
   UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☐No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)    Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)    County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)    Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.    Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**Attachment to Civil Cover Sheet**
*Mesogianes v. A. Clemente, Inc., et al.*

**I. (a) – DEFENDANTS**

A. CLEMENTE, INC.

ANTHONY CLEMENTE, INC.

SOLVAY SPECIALTY POLYMERS, USA, LLC

SOLVAY SOLEXIS, INC.

ARKEMA, INC.

E. I. DU PONT DE NEMOURS & COMPANY

THE CHEMOURS COMPANY

THE CHEMOURS COMPANY FC, LLC

THE 3M COMPANY

JOHN DOE ENTITIES #1-20

**I. (c) – PLAINTIFF'S ATTORNEYS**

**PHILLIPS & PAOLICELLI, LLP**
Steven Phillips, Esq.
Victoria E. Phillips, Esq.
Melissa Stewart, Esq.
747 3rd Avenue, 6th Floor
New York, New York, 10017
Phone: 212-388-5100

**COONEY & CONWAY**
Kevin Cooney, Esq.
Michael Lubeck, Esq.
120 N. Lasalle Street, Suite 3000
Chicago, Illinois 60602
Phone: 312-236-6166

**SZAFERMAN LAKIND BLUMSTEIN & BLADER, P.C.**
Arnold Lakind, Esq.
Robert Lytle, Esq.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08534
Phone: 609-275-0400

**I. (c)    DEFENDANTS' ATTORNEYS**

**McCARTER & ENGLISH LLP**
Lanny S. Kurzweil, Esq.
Ryan A. Richman, Esq.
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Telephone: 973-639-2044
 *E. I. du Pont de Nemours and Company,*
 *The Chemours Company, and*
 *The Chemours Company FC, LLC*

**ANTHONY CLEMENTE, INC.**
3 Dunlap Avenue
Pennsville, NJ 08070
 *A Clemente, Inc. and Anthony Clemente, Inc.*

**PAUL WEISS**
Crystal L. Parker, Esq.
1285 Avenue of the Americas
New York, NY 10019-6064
 *Solvay Specialty Polymers, USA, LLC*
 *and Solvay Solexis, Inc.*

**STEPTOE & JOHNSON**
Robert Shuftan, Esq.
227 West Monroe Street, Suite 4700
Chicago, IL  60606

**GREENBAUM ROWE SMITH & DAVIS LLP**
John North, Esq.
99 Wood Avenue South
Iselin, New Jersey  08830
 *Arkema, Inc.*

**MAYER BROWN**
Andrew J. Calica, Esq.
1221 Avenue of the Americas
New York, NY 10020-1001

**BRESSLER, AMERY & ROSS**
Donald J. Camerson, Esq.
325 Columbia Turnpike
Suite 301
Florham Park, NJ  07932

*The 3M Company*

VIII.    **RELATED CASE(S)**

Kimberly Bond, et al. v. Solvay Specialty Polymers USA, LLC, et al.,
No. 1:20-cv-08487-NLH-AMD

Slusser, et al. v. Solvay Specialty Polymers USA, LLC, et al.,
No. 1:20-cv-11393-NLH-AMD

Deese, et al. v. Solvay Specialty Polymers USA, LLC, et al.,
No. 1:21-cv-00217-NLH-AMD

Corrar v. Solvay Specialty Polymers USA, LLC, et al.,
No. 1:21-cv-00452-NLH-AMD

Shirley Bond v. Solvay Specialty Polymers USA, LLC, et al.,
No. 1:21-cv-11203-NLH-AMD

Nicole Bond v. Solvay Specialty Polymers USA, LLC, et al.
No. 1:21-cv-20755-NLH-AMD

Philipp, et al. v. Solvay Specialty Polymers USA, LLC, et al.,
SLM-L-181-21

Albritton v. Solvay Specialty Polymers USA, LLC, et al.,
SLM-L-187-21

Allen v. Solvay Specialty Polymers USA, LLC, et al.,
SLM-L-198-21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of January 2022, I caused true and correct copies of the

Notice of Removal and exhibits, Civil Cover Sheet, the Notice to the Clerk of the Superior Court of the

Filing of the Notice of Removal, Rule 7.1 Corporate Disclosure Statements, and Statement of Filing and

Service of Removal to be served via electronic mail and Federal Express Overnight mail on January

27, 2022 on the following counsel of record for plaintiffs, and via electronic mail on the following

counsel of record for co-defendants:

**As to Plaintiffs:**

**Steven Phillips, Esq.**
**Victoria E. Phillips, Esq.**
**Melissa Stewart, Esq.**
**Phillips & Paolicelli, LLP**
**747 3rd Avenue, 6th Floor**
**New York, New York, 10017**
**Phone: 212-388-5100**
**Fax 212-388-5200**

**Kevin Cooney, Esq.**
**Michael Lubeck, Esq.**
        **Cooney & Conway**
**120 N. Lasalle Street, Suite 3000**
**Chicago, Illinois 60602**
**Phone: 312-236-6166**
**Fax 312-236-3029**

**Arnold Lakind, Esq.**
**Robert Lytle, Esq.**
**Szaferman Lakind**
**Blumstein & Blader, P.C.**
**101 Grovers Mill Road, Suite 200**
**Lawrenceville, New Jersey 08534**
**Phone: 609-275-0400**
**Fax: 609-275-4511**

**As to A Clemente, Inc. and Anthony Clemente, Inc.**

**Anthony Clemente, Inc.**
**3 Dunlap Avenue**
**Pennsville, NJ 08070**

**The following were served by electronic mail only:**

**As to Solvay Specialty Polymers, USA, LLC and Solvay Solexis, Inc.**

**Crystal L. Parker, Esq.**
**Paul Weiss**
**1285 Avenue of the Americas**
**New York, NY 10019-6064**


**As to Arkema, Inc.**

**Robert Shuftan, Esq.**
**Steptoe & Johnson**
**227 West Monroe Street, Suite 4700**
**Chicago, IL  60606**

**John North, Esq.**
**Greenbaum Rowe Smith & Davis LLP**
**99 Wood Avenue South**
**Iselin, New Jersey  08830**


**As to The 3M Company**

**Andrew J. Calica, Esq.**
**Mayer Brown**
**1221 Avenue of the Americas**
**New York, NY 10020-1001**

**Donald J. Camerson, Esq.**
**Bressler, Amery & Ross**
**325 Columbia Turnpike**
**Suite 301**
**Florham Park, NJ  07932**

/s/*Lanny S. Kurzweil*
Lanny S. Kurzweil

ME1 39356800v.1