**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

ERIN ALBRITTON,

           Plaintiff,

v.

A CLEMENTE, INC.; ANTHONY
CLEMENTE, INC.; SOLVAY
SPECIALTY POLYMERS, USA, LLC;
SOLVAY SOLEXIS, INC.; ARKEMA,
INC.; E.I. DU PONT DE NEMOURS
& COMPANY; THE CHEMOURS
COMPANY; THE CHEMOURS COMPANY
FC, LLC; THE 3M COMPANY; and
JOHN DOE ENTITIES #1-20

           Defendants.

No. 1:22-cv-00397-NLH-AMD

**OPINION**

---

STACY ALLEN

           Plaintiff,

   v.

A CLEMENTE, INC., et al.,

           Defendants.

No. 1:22-cv-00396-NLH-AMD

---

RENEE MESOGIANES and WILLIAM
MESOGIANES, h/w,

           Plaintiffs,

    v.

A CLEMENTE, INC., et al.,

           Defendants.

No. 1:22-cv-00394-NLH-AMD

---

MARCIA M. PHILIPP, GERALD L.
PHILIPP h/w, and GERALD E.
PHILIPP,

                           No. 1:22-cv-00395-NLH-AMD

          Plaintiffs,

    v.

A CLEMENTE, INC., et al.,

          Defendants.

**APPEARANCES**:

STEVEN PHILLIPS, ESQ.
VICTORIA E. PHILLIPS, ESQ.
MELISSA STEWART, ESQ.
PHILLIPS & PAOLICELLI, LLP
747 3RD AVENUE, 6TH FLOOR
NEW YORK, NEW YORK 10017

KEVIN CONWNAY, ESQ.
MICHAEL LUBECK, ESQ.
COONEY & CONWAY
120 N. LASALLE STREET, SUITE 3000
CHICAGO, ILLINOIS 60602

ARNOLD LAKIND, ESQ.
ROBERT LYTLE, ESQ.
SZAFERMAN LAKIND BLUMSTEIN & BLADER, P.C.
101 GROVERS MILL ROAD, SUITE 200
LAWRENCEVILLE, NEW JERSEY 08534

    *Attorneys for Plaintiffs.*

**DAVID ANDREW SCHLIER**
MCCARTER & ENGLISH
405 N. KING STREET
STE 8TH FLOOR
WILMINGTON, DE 19801

**RYAN A. RICHMAN**
MCCARTER & ENGLISH
100 MULBERRY STREET
FOUR GATEWAY CENTER
NEWARK, NJ 07102

**LANNY STEVEN KURZWEIL**
MCCARTER & ENGLISH
FOUR GATEWAY CENTER
100 MULBERRY STREET
NEWARK, NJ 07102

*Attorneys for Defendant E.I. du Pont de Nemours and Company*

**THEODORE V. WELLS, JR.**
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064

*Attorneys for Defendants A. Clemente, Inc.; Anthony Clemente, Inc.; and Solvay Specialty Polymers, USA, LLC; the Chemours Company; and the Chemours Company FC, LLC*

**JOHN DAVID NORTH**
GREENBAUM, ROWE, SMITH, & DAVIS, LLP
METRO CORPORATE CAMPUS ONE
PO BOX 5600
WOODBRIDGE, NJ 07095

**IRENE HSIEH**
GREENBAUM ROWE SMITH & DAVIS LLP
99 WOOD AVENUE SOUTH
ISELIN, NJ 08830

**JEMI GOULIAN LUCEY**
GREENBAUM, ROWE
99 WOOD AVENUE SOUTH
ISELIN, NJ 08830

**MARJAN MOUSSAVIAN**
Greenbaum, Rowe, Smith & Davis LLP
P.O. Box 5600
Woodbridge, NJ 07095

*Attorneys for Defendants Solvay Solexis, Inc. and Arkema, Inc.*

**DONALD J. CAMERSON, II**
BRESSLER, AMERY & ROSS, ESQS.
325 COLUMBIA TURNPIKE
PO BOX 1980
FLORHAM PARK, NJ 07932

**JAMES WYLIE CROWDER, IV**
BRESSLER AMERY & ROSS PC
325 COLUMBIA TURNPIKE
FLORHAM PARK, NJ 07932

*Attorneys for Defendant the 3M Company*

**<u>HILLMAN</u>, District Judge**

Before the Court is a Motion for Remand filed by plaintiffs Erin Albritton, Stacy Allen, Renee Mesogianes, William Mesogianes, Marcia M. Philipp, Gerald L. Philipp, and Gerald E. Philipp, (collectively, "Plaintiffs") following the removal of this matter to Federal Court by Defendant E. I. du Pont de Nemours & Company ("DuPont" or "Defendant") on January 26, 2022.[1] For the reasons expressed below, Plaintiffs' Motion to Remand will be denied.

<b><u>BACKGROUND</u></b>

In September and October of 2021, Plaintiffs filed their initial complaints in the Superior Court of New Jersey, docketed as follows: <u>Albritton v. Clemente, Inc., et. al.</u>, No. SLM-L-000187-21; <u>Allen v. Clemente, Inc., et. al.</u>, No. SLM-L-000198-21; <u>Mesogianes, et. al. v. Clemente, Inc., et. al.</u>, No. SLM-L-000199-21; and <u>Philipp, et. al. v. Clemente, Inc., et. al.</u>,

---

[1] There are several Defendants that are a party to this action; however, only DuPont moved to remove. The other Defendants in this action are A. Clemente, Inc., Anthony Clemente, Inc., Solvay Specialty Polymers, USA, LLC, Solvay Solexis, Inc., Arkema, Inc., The Chemours Company, the Chemours Company FC, LLC, The 3M Company, and John Doe Entities #1-20.

No. SLM-L-000181-21.  The initial complaints listed as defendants only A. Clemente, Inc., and Anthony Clemente, Inc. and John Does 1-10.  (ECF 57-9 at 11; ECF 69 at 10).[2]  On December 13, 2021, Plaintiffs all filed Amended Complaints, which included additional defendants: DuPont; Solvay Specialty Polymers, USA, LLC; Solvay Solexis, Inc.; Arkema, Inc.; the Chemours Company; the Chemours Company FC, LLC; and the 3M Company.  (ECF 57-9 at 11; ECF 69 at 10-11).

The Amended Complaints seek to recover for personal injuries caused by Defendants' alleged improper disposal, use, and discharge of "toxic and dangerous chemicals and substances" including poly- and perfluoroalkyl substances ("PFAS"), halogenated hydrocarbons, heavy metals, freons, industrial alcohols and solvents, "numerous mixtures and wastes consisting of multiple compounds, substances, and/or products," polycyclic aromated hydrocarbons ("PAHs"), and "particulate matter and airborne waste."  (Amended Complaints at ¶¶ 3-4).[3]

---

[2] For purposes of this Opinion, unless otherwise specified, citations to the docket refer to Albritton v. Clemente, Inc., et. al., No. 1:22-cv-00397-NLH-AMD.

[3] The Amended Complaint for each Plaintiff is docketed as Exhibit A to the Notice of Removal in each case.  Albritton v. Clemente, Inc., et. al., No. 1:22-cv-00397-NLH-AMD, ECF 1-1; Allen v. Clemente, Inc., et. al., No. 1:22-cv-00396-NLH-AMD, ECF 4-1; Mesogianes, et. al. v. Clemente, Inc., et. al., No. 1:22-cv-00394-NLH-AMD, ECF 1-1; and Philipp, et. al. v. Clemente, Inc., et. al., No. 1:22-cv-00395-NLH-AMD, ECF 1-1.  To the extent that the citations are consistent across the Amended Complaints, we

Plaintiffs contend that these chemicals cause a variety of severe diseases, persist in the environment, and that "mixed" exposures can enhance the harm experienced by those who are exposed. (Id. at ¶ 5-6, 38). Plaintiffs allege that "although the calculation of the precise dose of exposure to each toxin or mixture (and to the aggregate of all exposures) is not presently known, these exposures, from both a qualitative and quantitative perspective, are more than sufficient to have caused the injured Plaintiff's injuries." (Id. at ¶ 9).

Plaintiffs note that the chemicals alleged were produced at the Chambers Works facility starting as early as 1891. (Id. at ¶ 68). Plaintiffs further contend that Defendants improperly disposed of or discharged these chemicals at the Clemente Property, which resulted in Plaintiffs' exposure at their respective properties. (Id. at ¶ 14). Plaintiffs allege that Defendants and their predecessors have known, or should have known, of the highly toxic nature of the chemicals. (Id. at ¶ 41).

DuPont was served the Amended Complaints on December 27, 2021, and subsequently removed these four cases to this Court on January 26, 2022, asserting that it had basis to remove under 28 U.S.C. § 1442(a)(1) and through diversity jurisdiction, arguing

_____

will refer to all four complaints as "Amended Complaints" followed by the paragraph citation.

Plaintiffs intentionally destroyed diversity via "fraudulent joinder" of defunct New Jersey based defendant A. Clemente, Inc. (Notices of Removal).[4]  On April 7, 2022, Plaintiffs filed a motion to remand.  (ECF 57).  DuPont filed its response on May 31, 2022, (ECF 69), and Plaintiffs filed their reply on June 14, 2022.  (ECF 70).  Plaintiffs' Motion to Remand is now ripe for adjudication.

**DISCUSSION**

I.   **Standard for Motion to Remand Under 28 U.S.C. § 1442(a)(1)**

28 U.S.C. § 1442(a)(1) provides that a defendant may remove a civil suit brought in state court "to the district court of the United States for the district and division embracing the place wherein it is pending" if the defendant is "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ."  See 28 U.S.C. §1442(a)(1).  Section 1442(a) is considered "an exception to the

---

[4] The Notices of Removal for each Plaintiff is docketed as follows: Albritton v. Clemente, Inc., et. al., No. 1:22-cv-00397-NLH-AMD, ECF 1; Allen v. Clemente, Inc., et. al., No. 1:22-cv-00396-NLH-AMD, ECF 4; Mesogianes, et. al. v. Clemente, Inc., et. al., No. 1:22-cv-00394-NLH-AMD, ECF 1; and Philipp, et. al. v. Clemente, Inc., et. al., No. 1:22-cv-00395-NLH-AMD, ECF 1.  Hereinafter we will refer to the Notices of Removal for citation purposes as "Albritton Notice of Removal", "Allen Notice of Removal", "Mesogianes Notice of Removal", and "Philipp Notice of Removal" followed by the paragraph citation.

well-pleaded complaint rule, under which (absent diversity) a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law." Kircher v. Putnam Funds Trust, 547 U.S. 633, 644 n.12, (2006) (internal quotation marks and citation omitted). Therefore, a matter "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." Jefferson Cty., Ala. v. Acker, 527 U.S. 423, 431 (1999).

It is well settled that the language of this statute is "to be liberally construed in favor of the federal forum." Cessna v. REA Energy Cooperative, Inc., 753 Fed. Appx. 124, 127 (3d Cir. 2018) (citations omitted)); see also Willingham v. Morgan, 395 U.S. 402, 406 (1969) (noting that the scope of the federal officer removal statute "is not 'narrow' or 'limited'"). This is because the purpose of § 1442(a)(1) is to "ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." Arizona v. Manypenny, 451 U.S. 232, 241 (1981). "[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." Willingham, 395 U.S. at 407.

That having been said, "[t]he party asserting jurisdiction bears the burden of showing that at all stages of the litigation

the case is properly before the federal court."  Samuel-Bassett
v. KIA Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004).
In order to properly remove a case from state court to federal
court on such a basis, the defendant bears the burden of
showing:

> (1) [the defendant] is a "person" within
> the meaning of the statute; (2) the
> [plaintiff's] claims are based upon the
> [defendant's] conduct "acting under" the
> United States, its agencies, or its
> officers; (3) the [plaintiff's] claims
> against [the defendant] are "for, or
> relating to" an act under color of
> federal office; and (4) [the defendant]
> raises a colorable federal defense to the
> [plaintiff's] claims.

Papp v. Fore-Kast Sales Co., 842 F.3d 805, 812 (3d Cir. 2016).
Moreover, a "motion to remand shares essentially identical
procedural posture with a challenge to subject matter
jurisdiction under Federal Rule of Civil Procedure 12(b)(1)" and
therefore it should be "evaluated using the same analytical
approach."  Id. at 811.

Subject matter jurisdiction can be challenged either
through a facial or a factual attack.  Davis v. Wells Fargo, 824
F.3d 333, 346 (3d Cir. 2016).  A facial attack "challenges
subject matter jurisdiction without disputing the facts alleged
in the [notice of removal], and it requires the court to
consider the allegations . . . as true."  Id. (internal
quotation marks and citations omitted).  In contrast, a factual

attack "disputes 'the factual allegations underlying the [] assertion of jurisdiction,' and involves the presentation of competing facts." Papp, 842 F.3d at 811 (quoting Davis, 824 F.3d at 346). Accordingly, a factual challenge allows "a court [to] weigh and consider evidence outside the pleadings." Davis v. Wells Fargo, 824 F.3d at 346. Here, Plaintiffs mount a factual attack on Defendant's removal petition and its partial reliance on the federal contractor defense.

## II.  **Analysis**

Defendant DuPont asserts two grounds for removal. First, Defendant claims that the matter is removable under 28 U.S.C. § 1442(a)(1) because Defendant was acting under the direction of the United States when it manufactured some of the alleged chemicals, which "necessarily resulted in air and water discharges" that Plaintiffs argue caused their personal injury. (Albritton Notice of Removal at ¶¶ 8-9; Allen Notice of Removal at ¶¶ 8-9; Mesogianes Notice of Removal at ¶¶ 8-9; Philipp Notice of Removal at ¶¶ 9-10). Second, Defendant DuPont argues that the matter is removable pursuant to 28 U.S.C. § 1332 and § 1441 under the doctrine of fraudulent joinder, alleging that Plaintiffs joined a non-diverse, defunct Defendant solely to destroy diversity jurisdiction. (Albritton Notice of Removal at ¶ 55; Allen Notice of Removal at ¶ 55; Mesogianes Notice of Removal at ¶ 55; Philipp Notice of Removal at ¶ 56).

The Court will first address Defendant's claim that the matter is removable under 28 U.S.C. § 1442(a)(1).  The Court notes that neither Party argues that the removal is untimely, and therefore the Court will consider the application for removal as timely.  As set out above, Defendant here bears the burden of showing:

> (1) [the defendant] is a "person" within the meaning of the statute; (2) the [plaintiffs'] claims are based upon the [defendant's] conduct "acting under" the United States, its agencies, or its officers; (3) the [plaintiffs'] claims against [the defendant] are "for, or relating to" an act under color of federal office; and (4) [the defendant] raises a colorable federal defense to the [plaintiffs'] claims.

Papp, 842 F.3d at 812.  The Court will address each element in turn.

> 1. Whether DuPont is a "person" within the meaning of the statute

While § 1442(a)(1) does not define "person" in the statute itself, § 1 of Title I of the United States Code defines "person" to "include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."  This definition was confirmed in Papp v. Fore-Kast Sales Co., Inc., 842 F.3d at 812.  Plaintiffs do not dispute that DuPont is a person within the meaning of the statute.  It is clear that DuPont constitutes a person within

the meaning of § 1442(a)(1).

2. Whether Plaintiffs' claims are based upon the DuPont's conduct "acting under" the United States, its agencies, or its officers

Defendant summarizes multiple contracts to produce various chemicals for use by the United States during World War II, according to Governmental specifications, amounts, and timelines.  Defendant explains that the chemicals include, but are not limited to, "perfluoroheptane, perfluoroxylene, fluorolube, uranium dioxide, anhydrous hydrofluoric acid, and dinitrotoluene."[5]  (ECF 69 at 28).  Defendant indicates that pursuant to these contracts it manufactured chemicals that it had not previously produced, with the "sole purpose" of meeting "government demand and need."  (ECF 69 at 29).

The Third Circuit has "explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the

---

[5] The contracts cover chemical products listed in Plaintiffs' Amended Complaints at the time of removal as "toxic and dangerous chemicals" Defendants allegedly wrongfully discharged, used, or disposed of resulting in injuries to Plaintiffs. (Compare ECF 69 at 16–21, listing halogenated hydrocarbons such as perfluoroheptane, perfluoroxylene, fluorolube, and identified specific waste compounds of explosives, fuel, ammunition, and other chemicals such as dinitrotoluene, uranium products, peruranic acid, and anhydrous hydrofluoric acid, to Amended Complaints at ¶ 4, naming "halogenated hydrocarbons" and "numerous mixtures and wastes consisting of multiple compounds, substances, and/or products (e.g., paints, dyes, fuels, explosives, ammunition . . .")).

federal officer or agency."  See Papp 842 F.3d at 813 (citing In
re Commonwealth's Motion to Appoint Counsel Against or Directed
to Defender Ass'n of Phila., 790 F.3d 457, 470 (3d Cir. 2015)
("[W]e disagree that the [defendant] is required to allege that
the complained-of conduct *itself* was at the behest of a federal
agency.")).  Like the federal removal statute overall, the
"acting under" element must be liberally construed and cover
actions that are made as "an effort to assist, or to help carry
out, the duties or tasks of the federal superior."  Defender
Ass'n, 790 F.3d at 468 (construing "acting under" liberally).

     The Third Circuit has pointed to the example of government
contractors, concluding that a "private contractor acted under a
federal officer or agency because the contractors 'help[ed] the
Government to produce an item that it need[ed].'"  Papp, 842
F.3d at 812 (quoting Defender Ass'n, 790 F.3d at 468)
(alterations in original); see also Watson, 551 U.S. at 153.
Where "'the federal government uses a private corporation to
achieve an end it would have otherwise used its own agents to
complete,' that contractor is 'acting under' the authority of a
federal officer" for the purposes of §1442(a)(1).  Papp, 842
F.3d at 812; see also Defender Ass'n, 790 F.3d at 468-70
(discussing different ways in which an entity might "act under"
a federal officer).  The Third Circuit explicitly rejected the
proposition that government contractors must carry any

additional or "special burden" to show it was engaging in conduct at the direction of the Government as "inconsistent with both precedent and the underlying objectives of the removal statute." Id. at 812-13.

The contracts the Defendant has pointed to in support of removal demonstrate that DuPont "performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." Id. at 153-54. Accordingly, Defendant has sufficiently plead that it is "acting under" the United States.

### 3. Whether Plaintiffs' claims against DuPont are "for, or relating to" an act under color of federal office

Plaintiffs argue that "DuPont has identified nothing in these [government] contracts governing the discharge of waste from its facilities." (ECF 57-9 at 8). DuPont responds, quoting prior opinions on this question in this Court, that "it is sufficient for the removing party to allege, as DuPont does here, 'that the manufacturing process of certain materials [at issue] . . . was at behest of the government and is related to the discharges that [form] the basis of Plaintiffs' complaint.'" (ECF 69 at 30 (quoting New Jersey Dep't of Envtl. Prot. v. E. I. Du Pont De Nemours & Co., 2020 WL 2611539, at *4-5 (D.N.J. May 22, 2020); see also New Jersey Dep't of Env't Prot. v. E.I. du Pont de Nemours & Co., 2020 WL 2041382 (D.N.J. Apr. 28, 2020)).

DuPont avers that, "[a]s demonstrated by the Chambers Works Contracts, DuPont produced and utilized at Chambers Works the types of substances Plaintiffs allege caused their injuries, as ordered by the United States Government."  (ECF No. 69 at 33).

Plaintiffs also argue that "there is no causal nexus alleged between DuPont's status as a government contractor between 1942 and 1945 and Plaintiffs' injuries."  (ECF 57-9 at 29).  Plaintiffs explain that DuPont does not allege facts that demonstrate that "waste from government work in World War II was even discharged from DuPont facilities" or "that such waste, if any, had the capacity to cause harm at all, or did actually cause the harm that Plaintiffs endured."  (ECF 70 at 12).  Plaintiffs further claim that they did not "intend" to allege harm caused by chemicals related to World War II.  (ECF 57-9 at 29-30).

Defendants respond that "all nine of the chemicals DuPont manufactured for the Federal Government fall under the broad categories of substances Plaintiffs alleged caused their injuries at the time the Complaints were filed and at the point in time that DuPont removed these cases."  (ECF 69 at 31).  Defendants also assert that despite Plaintiffs' disclaimer that they did not intend to implicate chemicals made in support of war efforts, "the Complaints speak for themselves, and include extraordinarily broad allegations."  (ECF 69 at 32).

Specifically, "Plaintiffs allege that their injuries were caused by DuPont's conduct 'at all relevant times', 'for decades', and 'at all material times hereto,' and its alleged release, discharge, use, and/or storage, of an exhaustive list of alleged 'toxins,' which encompasses all substances DuPont manufactured for the federal government." (Id.). Defendants further point out that Plaintiffs allege that the substances "persist 'indefinitely' in the environment, and that even a single exposure to such alleged 'other toxins' could have caused their injuries." (Id.).

This element is often referred to as the "nexus" or "causation" requirement because it demands that a defendant "show a nexus, a causal connection between the charged conduct and the asserted official authority." Acker, 527 U.S. at 431. However, Congress revised the Officer Removal Statute in 2011 to "broaden the universe of acts that enable Federal officers to remove [suits] to Federal Court." Papp, 842 F.3d at 813 (quoting H.R. Rep. No. 112-17, pt. 1, at 6 (2011) (alteration in original). Consistent with this expansion, the purpose of the removal statute is to ensure that this kind of federal defense is presented in a federal forum. See Willingham, 395 U.S. at 407, ("[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court"). Following Congress' amendment, the Third

Circuit has "taken a more permissive view of [the 'for or relating to'] requirement." Papp, 842 F.3d at 813. Accordingly, the Court has found it "sufficient for there to be a 'connection' or 'association' between the act in question and the federal office." Id.

This Court, and others in this District, have already considered a similar argument to Plaintiffs' argument here that the government contracts did not instruct Defendant to discharge chemicals, and found that a defendant need not prove the "for, or relating to" element at this stage. N.J. Dep't of Envtl. Prot. v. E.I. du Pont de Nemours & Co., No. 19-14765 at 2020 WL 2611539 at *5 (D.N.J. May 22, 2020); see N.J. Dep't of Envtl. Prot. v. E.I. du Pont de Nemours & Co., No. 19-14767 at 2020 WL 2041382 at *2-3 (D.N.J. Apr. 28, 2020) [the "New Jersey Department of Environmental Protection Cases"]. Defendant must only demonstrate that the claims "share a substantial connection to acts done under the color of federal office." Id.

In the New Jersey Department of Environmental Protection cases, the State of New Jersey argued that DuPont's discharge of hazardous waste was not an act under color of federal office because there was not a "direct connection or association between the unlawful act and the federal government's control over that act." N.J. Dep't of Envtl. Prot. v. E.I. du Pont de Nemours & Co., 2020 WL 2041382 at *2 (emphasis in original).

Specifically, they sought to distinguish between the manufacturing operation and the discharge and disposal of the results of those operations, arguing that "unless the federal contract at issue provides instructions for how hazardous substances should be discharged," there is no causal nexus simply from a government contract requesting the production of chemicals. Id. at *4. This Court rejected New Jersey's argument, and determined that because the allegations "share a substantial connection to acts done under the color of federal office" Defendants had demonstrated the "for, or relating to" element for purposes of removal.

Plaintiffs seek to distinguish the instant case from the New Jersey Environmental Protection cases. Plaintiffs' core distinction is that in the New Jersey Environmental Protection cases the plaintiffs asserted a facial attack on the assertion of federal officer jurisdiction, whereas in the instant case Plaintiffs are asserting a factual attack. (ECF 57-9 at 20). Plaintiffs also argue that the New Jersey Environmental Protection cases "sought to recover damages for injuries to natural resources" in contrast with the personal injury damages asserted in the instant case. (ECF 57-9 at 19). Finally, Plaintiffs assert that "the complaint in DEP v. DuPont specifically addressed DuPont's activities decades ago in furtherance of government war efforts"; whereas, in the instant

case Plaintiffs did not mention World Wars I or II, Plaintiffs were born decades after World Wars I and II, and the allegations in the Amended Complaints giving rise to Defendants World War II argument will either be dismissed or removed via amendment. (Id. at 19-21).

Plaintiffs' distinction does not alter our decision that Defendant has demonstrated the "for, or relating to" claim sufficiently to support removal.  First, Plaintiffs do not expand upon why the distinction between the damages sought has any bearing on whether Defendant has described that the activity alleged in the complaint was "for, or relating to" activity under the color of the federal government.  Second, whether Defendant has sufficiently presented a federal defense is not limited to what Plaintiffs alleged in their complaints. Instead, as discussed above, section 1442(a) is "an exception to the well-pleaded complaint rule, under which (absent diversity) a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law."  Kircher v. Putnam Funds Trust, 547 U.S. 633, 644 n.12, (2006) (internal quotation marks and citation omitted). In analyzing the federal contractor defense, "the federal-question element is met if the defense depends on federal law." Jefferson Cty., Ala. v. Acker, 527 U.S. 423, 431 (1999).

Moreover, specific to the question of subject matter

jurisdiction, "a factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings.'" Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (citation omitted). DuPont has presented additional facts in their removal filing in support of their proposed defense.  DuPont is entitled to put forward an alternate theory of causation, and here does so by asserting that the injuries complained of may have resulted from activity DuPont engaged in at the federal government's instruction.  Plaintiffs cannot avoid this defense by disclaiming, in their remand briefing, harm resulting from chemicals related to the World War II efforts.

Plaintiffs would also have the Court predict the future, always a perilous task.  They explain that in other similar cases this Court has dismissed claims related to the chemicals that are implicated by the World War II contracts.  Thus, Plaintiffs assert that "[t]o the extent that such allegations could be said to exist in these removed cases (and they do not) they will be eliminated as a matter of amendment."  (ECF 57-9 at 12-13).  Therefore, Plaintiffs conclude, "there is and will be no factual basis for federal officer jurisdiction."  (Id. at 13).  Plaintiffs cannot escape federal jurisdiction by previewing amendment that they purport they will make nor by projecting how this Court may rule on a potential, currently non-existent, motion to dismiss.  For purposes of a motion to

remand, federal jurisdiction must be analyzed as of the time of removal.  See Pettit v. New Jersey, No. 09-3735, 2010 WL 1006407 at *1 (D.N.J. Mar. 17, 2010); Westmorland Hospital Assn. v. Blue Cross of Western Pa., 605 F.2d 119, 123 (3d Cir. 1979); Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 593 (2013).

Defendant has sufficiently stated that the alleged conduct is "for, or relating to" an act under color of federal office.

### 4. Whether DuPont raises a colorable federal defense to Plaintiffs' claims

Defendant asserts that it has colorable defenses under the "government contractor defense" as outlined in Boyle and derivative immunity as outlined in Yearsley v. W.A. Ross Construction Co., 309 U.S. 18 (1940).  (ECF No. 69 at 35-36).

Under Boyle, the government contractor defense is established by the defendant showing that: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  Boyle, 487 U.S. at 512.  At this stage, the Court's role is "not to resolve whether the defendant has established the federal contractor defense or to resolve factual disputes, but only to ensure the existence of some competent evidence supporting a 'colorable' federal defense."  Cuomo v.

Crane Co., 771 F.3d 113, 117 (2d Cir. 2014).

In this matter, the Government entered into several contracts with Defendant to manufacture chemical products. (Albritton Notice of Removal at ¶¶ 8-24; Allen Notice of Removal at ¶¶ 8-24; Mesogianes Notice of Removal at ¶¶ 8-24; Philipp Notice of Removal at ¶¶ 9-25). In its removal petition, Defendant explained that the government contracts provide precise specifications. (Albritton Notice of Removal at ¶¶ 11, 13-15, 22-23, 32-33, 36, 44; Allen Notice of Removal at ¶¶ 11, 13-15, 22-23, 32-33, 36, 44; Mesogianes Notice of Removal at ¶¶ 11, 13-15, 22-23, 32-33, 36, 44; Philipp Notice of Removal at ¶¶ 12, 14-16, 23-24, 33-34, 37, 45). Defendant further explains that it complied with these specifications. (Id.). Although Plaintiffs argue that there were no specifications "respecting the discharge of waste" (ECF 70 at 11), it is sufficient at this stage that Defendant has pointed to specifications requiring production of chemicals related to Plaintiffs' claims.

Plaintiffs argue that Defendant falls short of meeting its burden with regards to the third element, noting that Defendant did not warn the Government of the hazards related to manufacturing the chemical products. (ECF 70 at 11). This is a factual question that goes to the merits of the defense, not the question of whether the defense is colorable. See New Jersey Dep't of Env't Prot. v. Exxon Mobil Corp., 381 F. Supp. 2d 398,

404 (D.N.J. 2005) (refusing to reach an analysis of the merits of the government contractor defense as the question at the removal stage is whether the defense is "colorable").  As set out above, at this stage the Court's task is "not to resolve whether the defendant has established the federal contractor defense or to resolve factual disputes, but only to ensure the existence of some competent evidence supporting a 'colorable' federal defense."  Cuomo v. Crane Co., 771 F.3d at 117. Defendant is not required to "win his case before he can have it removed."  Acker, 527 U.S. at 431.  We find that because Defendant has pointed to government contracts and specifications for chemicals alleged in the Amended Complaints, and has averred that it produced the chemicals pursuant to those contracts, Defendant has raised a colorable government contractor defense.

Because Defendant has demonstrated removability under Boyle, the Court will decline to analyze Defendant's additional basis of removal under Yearsley.[6]  And because the Court has found that removal under 28 U.S.C. § 1442(a)(1) is proper, the Court will decline to discuss Defendants' alternative basis for

---

[6] The Court notes that in a similar matter, a judge in this District has found that DuPont has a colorable defense under Yearsley.  See New Jersey Department of Environmental Protection, et al. v. E.I. Du Pont De Nemours & Company, et al., No. 19-14676, 2020 WL 2041382, at *4-5 (D.N.J. Apr. 28, 2020) (holding that DuPont is not precluded from arguing a colorable defense under Yearsley and that Dupont raised a colorable defense under Yearsley).

removal based on fraudulent joinder.

### CONCLUSION

For the reasons expressed above, Plaintiffs' Motion to
Remand this matter to state court, (ECF No. 57), will be denied.

An appropriate Order will be entered.


Date: March 10, 2023              s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.